UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JT2, INC., doing business as Todd Companies,<br><br>　　　　　Defendant. | No. 1:17-cv-00213-DAD-BAM<br><br>ORDER GRANTING IN PART AND <u>DENYING IN PART MOTION TO DISMISS,</u> <u>AND GRANTING MOTION TO STRIKE</u><br><br>(Doc. Nos. 31, 32) |
| JT2, INC., doing business as Todd Companies,<br><br>　　　　　Cross-claimant,<br><br>　　v.<br><br>TODD WILLIAMS and BUCKMAN-MITCHELL, INC.,<br><br>　　　　　Cross-defendants. | |

This matter is before the court on cross-defendants Williams and Buckman-Mitchell, Inc.'s (hereafter collectively the "third-party defendants") motions to dismiss and to strike causes of actions from the cross-claim filed against them. (Doc. Nos. 31, 32.) Defendant and cross-

1

claimant JT2, Inc. filed oppositions to these motions on January 9, 2018 and the third-party defendants replied on January 30, 2018. (Doc. Nos. 34, 35, 38, 39.) The court heard argument in this matter on February 6, 2018. At the hearing, attorney Ross Chinitz appeared on behalf of plaintiff, attorney Matt Dardene appeared on behalf of defendant, and attorney Christine Chambers appeared on behalf of the third-party defendants, respectively. Having considered the briefing and arguments of the parties, the court will deny in part and grant in part the motion to dismiss and grant the motion to strike, for the reasons given below.

## BACKGROUND

This matter concerns the alleged breach of an insurance contract. Plaintiff, the insurer, alleges defendant, the insured, breached the contract between these parties by failing to pay the amount of premiums due pursuant to two insurance contracts the parties entered into in 2013 and 2014. (*See* Doc. Nos. 1, 9.) Defendant JT2 thereafter filed a cross-claim against the third-party defendants, the insurance brokers who sold JT2 the policies at issue. (*See* Doc. No. 25.)

Defendant JT2's cross-claim alleges the following facts. JT2 employs plumbers, millwrights, laborers, and others for whom it maintains workers' compensation insurance. (*Id.* at ¶¶ 18–19.) JT2 was a customer and client of third-party defendant Buckman-Mitchell, an insurance broker which it had done business with in years prior to the contracts at issue here. (*Id.* at ¶¶ 20, 25.) Buckman-Mitchell was therefore familiar with JT2's insurance needs. (*Id.* at ¶ 25.)

In 2013, JT2 sought to obtain workers' compensation insurance for the 2013–2014 year, and began shopping for better rates, eventually advising Buckman-Mitchell that another brokerage could provide them better rates. (*Id.* at ¶¶ 26–27.) Defendant Williams, a representative of Buckman-Mitchell, thereafter advised JT2 he could find the company even better rates than the competing brokerage. (*Id.* at ¶ 28.) Based on this representation, the companies entered into an oral contract for Buckman-Mitchell to obtain workers' compensation insurance for JT2. (*Id.* at ¶ 29.) Buckman-Mitchell provided JT2 with a quote for such insurance in July 2013 for a policy covering the period from July 31, 2013 to June 22, 2014. (*Id.* at ¶¶ 33–34.) JT2 agreed to the policy based on the quote. (*Id.* at ¶¶ 36–37.) However, the quoted rate was inaccurate, and JT2 was not provided with a copy of the actual 2013 policy until October

2

2017. (*Id.* at ¶¶ 38–39.)

Toward the end of the policy period, plaintiff Starr Indemnity conducted an audit of JT2's workforce to determine whether there were any overages owed for differences between the estimated payroll and actual payroll. (*Id.* at ¶ 42.) Following the audit, Starr Indemnity assessed overages which it and JT2 currently dispute. (*Id.* at ¶¶ 42–43.)

As the first policy at issue here neared its end, Buckman-Mitchell recommended JT2 renew its policy with Starr Indemnity, and again provided JT2 with a quote for a policy covering the period from June 22, 2014 to June 22, 2015. (*Id.* at ¶¶ 44–45.) JT2 agreed to the policy renewal based on the quote, though again, the premium rate was misquoted. (*Id.* at ¶¶ 47, 50–51.) Starr Indemnity conducted another audit toward the end of the 2014 policy, and again assessed overages at "substantially higher rates" than had previously been quoted, which JT2 disputes. (*Id.* at ¶ 53.) Additionally, and of particular import in light of its arguments addressed below, JT2 alleges that:

> [A]t the end of each audit period after 2013 and 2014, JT2 requested [Buckman-Mitchell] determine and explain the amounts of the overages assessed by [Starr Indemnity]. In each case, [Buckman-Mitchell], by and through its agent, employee, officer, and director Todd Williams explained to JT2 that [Starr Indemnity] had inappropriately classified portions of JT2's workforce because JT2 had not properly segregated its payroll, JT2 had inappropriately accounted for taxes, fees, and assessments, or because JT2 had inappropriately accounted for the broker's fees owed on the Policies. As a result, Williams repeatedly instructed JT2 to simply "pay" the amounts [Starr Indemnity] alleged were owed.

(*Id.* at ¶ 56.)

On October 30, 2017, defendant JT2 filed a crossclaim against the third-party defendants Williams and Buckman-Mitchell, Inc., alleging that the third-party defendants had given JT2 an inaccurate quote for the premiums and stating eleven causes of action: (1) breach of oral contract for the 2013 policy; (2) breach of oral contract for the 2014 policy; (3) breach of the covenant of good faith and fair dealing; (4) promissory estoppel; (5) negligent misrepresentation; (6) negligence; (7) professional negligence; (8) breach of fiduciary duties; (9) implied indemnity; (10) contribution; and (11) unfair business practices under California Business and Professions Code § 17200, *et seq*. (Doc. No. 25.) The third-party defendants have now moved to dismiss the

first, second, third, fourth, fifth, seventh, and eighth causes of action of the crossclaim. (Doc. No. 31.) Additionally, the third-party defendants move to strike the sixth cause of action of the cross-claim as redundant. (Doc. No. 32.) The third-party defendants do not seek dismissal of the ninth, tenth, or eleventh causes of action of JT2's crossclaim.

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**ANALYSIS**

*A.     Motion to Dismiss*

The third-party defendants move to dismiss certain causes of action from JT2's cross-claim on two separate grounds. According to the third-party defendants, each of the causes of action for which dismissal is sought is barred by the statute of limitations. Additionally, the third-party defendants assert that JT2's eighth cause of action must be dismissed because an action for breach of fiduciary duties is not cognizable under California law. Each argument will be addressed by the court in turn below.

1.     Statute of Limitations

Both JT2 and the third-party defendants agreed in their briefing and at oral argument that the claims targeted by the motion to dismiss are governed by a two-year statute of limitations. (*See* Doc. No. 31 at 4; Doc. No. 34 at 9.) JT2 argues these claims should not be dismissed for the following reasons: (1) under the delayed discovery rule, its causes of action did not accrue until it discovered or had reason to discover the cause of action; (2) it is entitled to equitable tolling because the third-party defendants fraudulently concealed their wrongdoing; and (3) the third-party defendants should be equitably estopped from asserting a statute of limitations defense under the circumstances presented. (Doc. No. 34 at 8–13.)[1]

Focusing on the equitable tolling argument, JT2 asserts it is entitled to equitable tolling of the statute of limitations because the third-party defendants fraudulently concealed their wrongdoing. (Doc. No. 34 at 11–12.) The third-party defendants assert that JT2 has not pleaded sufficient facts to establish fraudulent concealment. (Doc. No. 39 at 2.)

"The doctrine of fraudulent concealment . . . limits the typical statute of limitations." *Regents of the Univ. of Cal. v. Superior Court*, 20 Cal. 4th 509, 533 (1999). This doctrine is intended to remedy a situation where a defendant's "wrongdoing has resulted in the plaintiff being ignorant of his cause of action, despite the exercise of reasonable diligence." *Sagehorn v.

---

[1] Because it finds that JT2 has pleaded sufficient facts which, if proven, would entitle it to equitable tolling even if the statute of limitations with respect to its claims had already run, the court does not reach arguments concerning the discovery rule or equitable estoppel and therefore need not decide here when, precisely, JT2's causes of action accrued.

5

*Engle*, 141 Cal. App. 4th 452, 461 (2006); *see also Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013). This doctrine "tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it." *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994). The party invoking the doctrine of fraudulent concealment "must specifically plead facts which, if proved, would support the theory." *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 641 (2003); *Union Carbide Corp v. Superior Court*, 36 Cal. 3d 15, 25 (1984) (noting that the party invoking fraudulent concealment to circumvent a statute of limitations "must plead with particularity the facts showing fraudulent concealment"). In order to raise the doctrine of fraudulent concealment, the complaint must allege facts describing "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315, 321 (1974).

Counsel for JT2 explained at the hearing on the pending motion to dismiss that the third-party defendants allegedly fraudulently concealed their wrongdoing by misrepresenting to JT2 why it was being assessed overage charges. Indeed, JT2 alleges in its cross-complaint that it inquired with Buckman-Mitchell about the overages at the end of each audit period for the 2013 and 2014 policies. (Doc. No. 25 at ¶ 56.) Buckman-Mitchell allegedly advised JT2 each time it inquired that the overages were either caused by Starr Indemnity having inappropriately classified portions of JT2's workforce or by JT2 inappropriately accounting for various taxes, fees, or assessments. (*Id.*) JT2 alleges in its cross-complaint that, based on these representations, it had no reason to know that Buckman-Mitchell had misquoted the premium rates to it. (*Id.* at ¶ 57.) JT2 also alleges it first learned of the actual rate being charged for the premiums under the insurance policy in October 2017, when it finally obtained copies of the 2013 and 2014 insurance policies. (*Id.* at ¶¶ 38, 49.) Regardless of when the evidence to be presented in this case may ultimately show that JT2 was on inquiry notice of the alleged fraudulent concealment, the pleadings must be accepted as true and any dispute as to that factual question can certainly not be

resolved at this stage of the proceedings. *See Gen. Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991) ("Where there are disputed questions of fact or facts susceptible to opposing inferences as to when the statute of limitations for fraud commenced, summary judgment is not appropriate."); *Grisham v. Philip Morris, Inc.*, No. CV 02-730 SVW (RCx), 2009 WL 9102320, at *2–3 (C.D. Cal. Dec. 3, 2009) (noting that factual disputes related to a statute of limitations defense must be decided by a jury).

Given that JT2 has pleaded facts showing that it inquired regarding the overage charges and was allegedly misled by the third-party defendants, cross-defendants Williams and Buckman-Mitchell, Inc.'s motion to dismiss on statute of limitations grounds must be denied.

### 2. Fiduciary Duties of Brokers

The third-party defendants argue in the alternative that JT2's eighth cause of action for breach of fiduciary duties cannot be sustained against them because under California law, insurance brokers have no fiduciary relationship with insureds. (*See* Doc. No. 31 at 7–8.) JT2 opposes the motion to dismiss brought on this grounds, arguing that, in limited circumstances which are present in this case, fiduciary duties are owed, pointing to the decision in *Hydro-Mill Co. v. Hayward, Tilton & Rolapp Ins. Assocs.*, 115 Cal. App. 4th 1145 (2004). (Doc. No. 34 at 13–14.)

The elements of a cause of action for breach of a fiduciary duty are: (1) "existence of a fiduciary duty"; (2) "breach of the fiduciary duty"; and (3) "damage proximately caused by the breach." *Tribeca Cos. v. First Am. Title Ins. Co.*, 239 Cal. App. 4th 1088, 1114 (2015) (quoting *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 932 (2011)). Other courts have explained that this claim requires the existence of a fiduciary relationship, which incurs not only the obligation to exercise due care, but also duties of loyalty and good faith. *See Fed. Deposit Ins. Corp. v. Switzer*, No. 3:13-cv-03834-RS, 2014 WL 12696532, at *3 (N.D. Cal. Apr. 9, 2014) (explaining negligence and breach of fiduciary duty claims were not duplicative because a fiduciary relationship imposes duties beyond merely due care).

Whether insurance brokers have a fiduciary relationship with or owe fiduciary duties to insureds in California is an unsettled question of law. Notably, the California Court of Appeals in

7

*Hydro-Mill* did not decide whether there was a fiduciary relationship between insurance brokers and insureds. *See* 115 Cal. App. 4th at 1156–58. While the court in that case stated that brokers have certain fiduciary duties, it also cited with approval practice guides suggesting that a broker's fiduciary duty may simply be a duty to employ reasonable care. *Id.* at 1158. Ultimately, the state appellate court in *Hydro-Mill* analogized the cause of action to a professional negligence claim for statute of limitations purposes. *Id.* at 1159–60. Following the issuance of the decision in *Hydro-Mill*, federal district courts in California have differed on what must be pleaded to allege a cognizable claim for breach of fiduciary duty in the insured-broker context. *See Lake v. Rutherfoord Int'l, Inc.*, No. 14-cv-2431-H (NLS), 2014 WL 12526276, at *4–5 (S.D. Cal. Nov. 25, 2014) (declining to dismiss breach of fiduciary duty claims against broker at the pleading stage); *Motorist Commercial Mut. Ins. Co. v. Soltis*, No. 2:13-cv-01647-TLN-CKD, 2013 WL 6887968, at *4 (E.D. Cal. Dec. 31, 2013) (requiring plaintiffs to allege specific facts that would give rise to a fiduciary relationship beyond the mere existence of a broker-insured relationship); *Advanced Salon Visions Inc. v. Lincoln Benefit Life Co.*, No. 08cv2346-LAB (WMc), 2010 WL 3341803, at *15 (S.D. Cal. Aug. 25, 2010) (noting fiduciary duties may be owed where broker is an agent of the insured); *Nat'l Sur. Corp. v. Pac. Int'l Vegetable Mktg., Inc.*, No. C-09-4898 EMC, 2010 WL 807570, at *3 (N.D. Cal. Mar. 5, 2010) (holding that no fiduciary duty was owed under California law between an insurance broker and a sophisticated insured, though one might exist for unsophisticated insureds).

Regardless of whether fiduciary relationships are created between insurance brokers and their clients as a general matter of California law, here, JT2 has alleged sufficient facts in its cross-claim to assert such a relationship existed here. Under California law, "[a]n agency relationship is a fiduciary one, obliging the agent to act in the interest of the principal." *Mendoza v. Rast Produce Co.*, 140 Cal. App. 4th 1395, 1405 (2006) (quoting *Engalla v. Permanente Med. Grp.*, 15 Cal. 4th 951, 977 (1997)). The quintessential feature of an agency relationship is that one party—the agent—acts on behalf of another—the principal—while being subject to the principal's control. *See Korean Air Lines Co. v. County of Los Angeles*, 162 Cal. App. 4th 552, 562 (2008). However, "the existence of an agency relationship is usually a question of fact."

*Borders Online LLC v. State Bd. of Equalization*, 129 Cal. App. 4th 1179, 1189 (2005); *see also Violette v. Shoup*, 16 Cal. App. 4th 611, 619 (1993). In this case, it is not certain that the third-party defendants will ultimately be found to be agents of JT2. Nevertheless, the factual allegations of the cross-claim do allege there was a relationship between the parties in which JT2 contracted with the third-party defendants to locate workers' compensation insurance on behalf of JT2.[2] (Doc. No. 25 at ¶¶ 18–58.) Whether an agency relationship that might incur fiduciary duties was ultimately created here is a question of fact better resolved at the summary judgment stage. *See Lake*, 2014 WL 12526276, at *4–5. The court finds that JT2's allegations are at least sufficient to make such a claim plausible. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

          e.      <u>Damages</u>

The third-party defendants also argue JT2 failed to adequately plead what special damages it seeks and, in any event, JT2's claims for punitive damages must fail. (Doc. No. 31 at 8–9; Doc. No. 39 at 7.) JT2 argues it has adequately pleaded damages and should be allowed to seek punitive damages. (Doc. No. 34 at 18–20.)

Rule 9(g) of the Federal Rules of Civil Procedure provides that "[i]f an item of special damage is claimed, it must be specifically stated." "Special damages are those elements of damages that are the natural, but not the necessary, consequence of a defendant's conduct." *Botosan v. Fitzhugh*, 13 F. Supp. 2d 1047, 1053 (S.D. Cal. 1998). Emotional distress and attorneys' fees may constitute items of special damages. *Id.* No specific dollar amount need be alleged to satisfy the applicable pleading standard. *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998). Unless special damages are a necessary part of a party's cause of action, "the purpose of requiring that special damages be specifically pleaded is to protect the defendant against being surprised at trial by the extent and character of the [party's] claim." *Brown v. City of Caldwell*, No. 1:10-cv-00536-BLW, 2012 WL 4522728, at *4 (D. Idaho Oct. 1, 2012) (quoting 5a Charles Alan Wright, Arthur R. Miller et al., Federal

---

[2] JT2 also alleges that the third-party defendants "became the agent of JT2" when they agreed to perform brokerage functions for it. (Doc. No. 25 at ¶ 30.) However, this is a legal conclusion and not a factual allegation. *See United States ex rel. Chunie*, 788 F.2d at 643 n.2.

Practice & Procedure, § 1310 (3d ed. 2005)). In its cross-claim JT2 seeks "general and special damages in an amount to be proven at the time of trial." (Doc. No. 25 at ¶ 124.) JT2 explains in its opposition to the pending motion to dismiss that the special damages it seeks are merely those sought later under the prayer for relief of the cross-claim, namely, money damages, exemplary and punitive damages, attorneys' fees incurred in defending against the suit brought by plaintiff Starr Indemnity, and other demands included therein. (*Id.* at 21–22.) The court concludes JT2 has sufficiently pleaded special damages here to make the third-party defendants aware of the damages it seeks.

The court now turns to the motion to dismiss JT2's punitive damages claim. To the extent punitive damages are sought by JT2 in connection with its promissory estoppel and negligent misrepresentation claims, that damages claim must be dismissed. Punitive damages are not typically available for such claims. *See Gasnik v. State Farm Ins. Co.*, 825 F. Supp. 245, 251 (E.D. Cal. 1992) (noting the "general rule" that "punitive damages can not be recovered on negligence claims"); *CalFarm Ins. Co. v. Krusiewicz*, 131 Cal. App. 4th 273, 285–86 (2005) (explaining that promissory estoppel employs equitable principles to provide recovery when consideration is not present to form a contract, but does not allow the awarding of punitive damages). Here, JT2 has not come forward with any authority in support of the notion that punitive damages are recoverable on these causes of action in this case.

However, JT2 also seeks punitive damages on its breach of the implied covenant of good faith and fair dealing and fiduciary duties claims. Punitive damages are typically available for those types of claims. *See, e.g.*, *Lunsford v. Am. Guar. & Liab. Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994) ("Punitive damages may be awarded when the insurer breaches the covenant of good faith and fair dealing and is 'guilty of oppression, fraud or malice.'") (quoting *Tibbs v. Great Am. Ins. Co.*, 755 F.2d 1370, 1375 (9th Cir. 1985)); *Mihara v. Dean Witter & Co.*, 619 F.2d 814, 824 (9th Cir. 1980) ("Punitive damages are recoverable for a breach of fiduciary duty pursuant to Section 3294, California Civil Code."). Moreover, JT2 has pleaded facts that could support a finding that the third-party defendants' actions were done with "oppression, fraud, or malice." Cal. Civil Code § 3294(a). In this regard, JT2 alleges that it told the third-party defendants it

intended to use another brokerage, that the third-party defendant intentionally misrepresented the premium rates they could procure for JT2, and provided JT2 a quote that was inaccurate in order to maintain JT2's business. These are sufficient factual allegations from which, if proven, a jury could conclude punitive damages are appropriate on JT2's good faith and fair dealing and fiduciary duties claims.

2. *Motion to Strike*

The third-party defendants also filed a motion to strike JT2's sixth cause of action for negligence. (Doc. No. 32.) Particularly, the third-party defendants note that JT2 included two causes of action labeled as the "sixth cause of action," one alleging negligence and the other alleging professional negligence, and assert these claims are duplicative. (*Id.* at 1–2.) JT2 argues that these claims are not duplicative, because they are subject to different standards of proof: its negligence claim alleges intentional wrongdoing and can be proven by lay witnesses, whereas its professional negligence claim must be established by expert testimony. (Doc. No. 35 at 2.)

The Federal Rules of Civil Procedure authorize a court to strike redundant or duplicative causes of action. Fed. R. Civ. P. 12(f) ("The court may strike from a pleading . . . any redundant . . . matter."); *Riot Games Merch., Inc. v. Tri-Force Sale, LLC*, No. 2:15-cv-05817-ODW (Ex), 2015 WL 13344626, at *2 (C.D. Cal. Dec. 1, 2015). "In California, negligence claims against insurance brokers are adjudicated according to the professional negligence standard," which necessitates expert witness evidence under California law. *U.S. Fid. & Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1138 (9th Cir. 2011). JT2 concedes that negligence claims against insurance brokers are typically duplicative of professional negligence claims, but contends that an exception applies where a party alleges the broker engaged in intentional misconduct, because that party may rely on principles of *res ipsa loquitur* to state a negligence claim. (Doc. No. 35 at 4.) JT2 notes that it intended to plead these claims in the alternative, with the negligence claim alleging intentional misconduct by the third-party defendants under the *res ipsa loquitur* doctrine, and the professional negligence claim alleging negligent conduct. (*Id.*)

Claims may be pleaded in the alternative, even if they are fundamentally inconsistent with each other. *See Molsbergen v. United States*, 757 F.2d 1016, 1018–19 (9th Cir. 1985); *Coleman*

11

*v. Standard Life Ins. Co.*, 288 F. Supp. 2d 1116, 1120 (E.D. Cal. 2003). However, JT2 cites only one case in support of the proposition that it should be allowed to proceed on a claim in the alternative under the doctrine of *res ipsa loquitur*. (Doc. No. 35 at 4) (citing *Barrett v. JP Morgan Chase Bank*, No. 14cv2976 DMS (WVG), 2016 WL 3523046 (S.D. Cal. June 27, 2016)). However, the decision in *Barrett* does not support application of *res ipsa loquitur* in this case. In fact, the district court in that case *rejected* an attempt to invoke *res ipsa loquitur* to allow a party to pursue a professional negligence claim without the aid of an expert witness. *See Barrett*, 2016 WL 3523046, at*4–5 (S.D. Cal. June 27, 2016) (noting *res ipsa loquitur* applies to "certain kinds of accidents [that] are so likely to have been caused by the defendant's negligence that one may fairly say 'the thing speaks for itself'") (quoting *Brown v. Poway Unified Sch. Dist.*, 4 Cal. 4th 820, 825 (1993)). As the court in *Barrett* observed, the cases invoking this principle are those where the negligence is obvious simply from the nature of the injury sustained by the plaintiff. *Id.* at *4 (noting cases "involving a sponge left inside a patient after surgery, a patient burned by an x-ray machine, a patient burned through application of a heating apparatus, and a patient suffering an infection by an unsterilized needle"). Here, JT2's claim is that the third-party defendants provided it a quote concerning insurance coverage, but the final price of the policy was higher than what was quoted. Whether or not this amounts to professional negligence in terms of securing workmen's compensation insurance is not a matter of common sense or one where the alleged negligence is obvious from the nature of the injury suffered. It may be standard industry practice for quoted rates to be somewhat lower than the final rates actually charged. As such, expert testimony would be required in order for JT2 to satisfy its burden of proof as to its negligence claim and the Ninth Circuit has so held. *See U.S. Fid. & Guar. Co.*, 641 F.3d at 1138. JT2's negligence claim is therefore duplicative of its professional negligence claim and the motion to strike that claim from its cross-claim will therefore be granted.

**CONCLUSION**

For the reasons set forth above:

1. The motion to dismiss (Doc. No. 31) is granted in part and denied in part, in particular:

/////

12

a. The motion to dismiss is granted as to JT2's claims for punitive damages on its negligent misrepresentation and promissory estoppel causes of action, and the punitive damages sought with respect to those claims are dismissed;

b. The motion is denied in all other respects; and

2. The motion to strike (Doc. No. 32) is granted, and JT2's sixth cause of action for negligence is struck as duplicative of its cause of action for professional negligence.

IT IS SO ORDERED.

Dated: **March 1, 2018**

_____
UNITED STATES DISTRICT JUDGE