Patrick S. Schoenburg (State Bar No. 162842)
pschoenburg@wshblaw.com
**Wood, Smith, Henning & Berman LLP**
7112 North Fresno Street, Suite 160
Fresno. CA 93720-2949
Phone: 559-437-2860 ♦ Fax: 559-438-1350

Ross M. Chinitz (Pro Hac Vice)
Ross.chinitz@starrcompanies.com
**Starr Insurance Holdings, Inc.**
445 Park Avenue, 5ht Floor
New York, NY  10022
Phone: 646-227-6409 ♦ Fax: 631-685-4274

Attorneys for Plaintiff STARR INDEMNITY & LIABILITY COMPANY

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> JT2, INC. d/b/a TODD COMPANIES, <br><br> Defendant. <br><br> JT2, INC. d/b/a TODD COMPANIES, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> BUCKMAN-MITCHELL, INC., TODD WILLIAMS, and ROES 1-100, <br><br> Third-Party Defendants. | Case No. 17-cv-00213-DAD-BAM <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> Judge: Hon. Dale A. Drozd <br> Ctrm:   5 – 7th Floor <br> Hearing Date: September 21, 2021 <br> Hearing Time: 9:30 a.m. <br><br> Complaint Filed: February 14, 2017 |

Plaintiff Starr Indemnity & Liability Company submits this memorandum of points and authorities in support of its motion for summary judgment or, alternatively, for partial summary judgment as to the defenses asserted by Defendant JT2, Inc.

## I. SUMMARY OF ARGUMENT

Starr is entitled to summary judgment on its breach of contract complaint for damages for unpaid additional insurance premium after payroll audits of the 2013-2014 and 2014-2015 workers' compensation insurance policies because that is what the written contracts require.

JT2 asserts sixteen defenses, many of which are duplicative, and essentially boil down to some form of either: (1) Starr misclassified JT2's employees or; (2) Starr has been paid in full. These defenses have no legal effect as Starr properly classified JT2's employees and calculated the additional premium due in accordance with the terms of the workers' compensation insurance policies and California rules and regulations. Additionally, Starr has not been paid in full as it continues to seek payment of the outstanding audit amounts due.

The unambiguous terms of the written insurance contracts control and summary judgment should be granted as a matter of law.

Alternatively, the Court should grant partial summary judgment as to the defenses asserted by JT2 as for forth below.

## II. STATEMENT OF FACTS

**A.   Factual Background Regarding Workers Compensation Insurance Policies and Premiums**

Workers compensation premiums are calculated based on job categories, known in the industry as class codes. Some class codes have a greater historical risk of injury (e.g., roofer) as opposed to other class codes (e.g., office worker), so its class code rate for purposes of calculating policy premiums based on the amount of payroll per class code is higher. [Declaration of Harrington Williams ("Williams Dec.") ¶ 2].

Class code rates are governed and determined in California by the Department of Insurance. Starr can only quote and charge class code rates which are in the rate filings approved by the California Department of Insurance at the time the class code rates are quoted. Starr has no flexibility in quoting class code rates. [Williams Dec. ¶ 3].

Commercial plumbing companies often have employees who perform different tasks, so they may have many different class codes applicable to their workers compensation insurance policies. [Williams Dec. ¶ 4].

Besides class code rates and payroll in each class code, there are other factors and rates that make up a workers compensation insurance premium. For example, one factor in policy premium calculation is called an experience modification rating. An experience modification rating is calculated by and governed in California by the Workers' Compensation Insurance Rating Board ("WCIRB"). Each year the WCIRB calculates the experience modification rate for each employer required to have workers compensation insurance and publishes the rate to that employer and insurance carriers/providers in the industry. The experience modification rate is calculated utilizing a company's payroll (i.e., exposure) and injury history. [Williams Dec. ¶ 5].

While Starr has no flexibility in quoting class code rates, it can offer certain credits and discounts to reduce the policy premium. [Williams Dec. ¶ 6]. These credits and discounts, however, do not reduce or otherwise modify the class code rates but, rather, reduce the policy premium after the class code rates are applied to the applicable payroll. [Williams Dec. ¶ 7].

The California Workers' Compensation Uniform Statistical Reporting Plan – 1995, effective January 1, 2014, is the manual that governs workers compensation policies and audits (the "Manual"). [SUF 15]. Part 3, Section V.3., addresses the situation where an insured's employee receives remuneration in two or more class codes. [SUF 16]. This section provides as follows:

> . . . the remuneration of an one employee may be divided between two or more classifications, provided the employer has maintained complete and accurate records supported by original time cards or book entries which show separately, both by individual employee and in summary by operations performed, the remuneration earned by such employee, except such division SHALL NOT BE ALLOWED:
>
> \*   \*   \*
>
> b. If the division is contrary to classification phraseology.

> If the employer fails to keep complete and accurate records as provided by this rule, the entire remuneration shall be assigned to the highest rated classification applicable to any part of the work performed by the employee. Payroll may not be divided by means of percentages, averages, estimates, or any bases other than specific time records.

The Manual provides definitions of each class code. [SUF 17].

**B.    Facts Pertinent to Starr's Complaint**

Starr issued a workers compensation insurance policy, under policy number 100 0001234 00, which covered the time period July 31, 2013 to June 22, 2014 (the "2013 Policy"). [SUF 1]. The 2013 Policy renewed for the time period June 22, 2014 to June 22, 2015 (the "2014 Policy" and, collectively with the 2013 Policy, the "Policies"). [SUF 2]. JT2 agreed to remit payment of premiums and surcharges, including audit premiums, in consideration for Starr's provision of insurance coverage to Defendant. [SUF 5]. Starr fulfilled its contractual obligations and provided the insurance coverage afforded by the Policies. [SUF 6].

The Policies each provide that ". . . this policy, including all endorsements forming a part thereof, constitutes the entire contract of insurance. No condition, provision, agreement, or understanding not set forth in this policy or such endorsements shall affect such contract or any rights, duties, or privileges arising therefrom." [SUF 3]. The Policies each also state: "The only agreements relating to this insurance are stated in this policy. The terms of the policy may not be changed or waived except by endorsement issued by us to be part of this policy." [SUF 4].

Pursuant to the Policies, the initial policy premium paid by JT2 was an estimated premium based on JT2's estimate of its payroll per class code. [SUF 7]. The final premium is determined by a payroll audit after the policy term ends. [SUF 8].

A final payroll audit was conducted by Starr of JT2's payroll records for the policy period after the 2013 Policy ended. [SUF 9 and 10].

A final payroll audit was conducted by Starr of JT2's payroll records for the policy period after the 2014 Policy ended. [SUF 13 and 14].

JT2 disputed the audit results of both the 2013 Policy and the 2014 Policy. [SUF 15]. Due to the disputes, Starr agreed to perform re-audits of the Policies. [SUF 16].

During the re-audit of the 2013 Policy, JT2 provided a payroll breakdown, by class code. [SUF 35]. Starr used JT2's exact payroll breakdown, by class code, to compute the final premium due on the 2013 Policy after the re-audit. [SUF 36]. The calculation of the additional premium owed after the re-audit utilized the class code rates and other rates, credits, and charges set forth in the 2013 Policy. [SUF 37].

The final premium due for the 2013 Policy after the re-audit was $272,982.00. [SUF 38]. JT2 paid $250,419.00 towards the final premium due for the 2013 Policy. [SUF 39]. The balance due for the 2013 Policy is $22,563.00. [SUF 40].

During the re-audit of the 2014 Policy, JT2 provided a payroll breakdown, by class code. [SUF 41]. This time Starr, however, did not use JT2's exact payroll breakdown, by class code, to compute the final premium due on the 2014 Policy after the re-audit. [SUF 42]. Starr was unable to use JT2's figures because it did not properly segregate the payroll for the 3rd and 4th quarters of 2014. [SUF 43]. The re-audit followed the rules set forth in the Manual. [SUF 47]. The calculation of the additional premium owed after the re-audit utilized the class code rates and other rates, credits, and charges set forth in the 2014 Policy. [SUF 48].

The final premium due for the 2014 Policy after the re-audit was $396,465. [SUF 49]. JT2 paid $342,047.00 towards the final premium due for the 2014 Policy. [SUF 50]. The balance due for the 2014 Policy is $54,418.00. [SUF 51].

After the re-audits, JT2 and its retail broker were provided with the revised audit results and a demand for payment of additional premium owed of $76,891.00 ($22,563.00 for the 2013 Policy and $54,418.00 for the 2014 Policy). [SUF 52].

JT2 has not paid the additional premium of $76,891.00 to Starr. [SUF 53].

### III. STATEMENT OF CASE CONTENTIONS AND DEFENSES

#### A. Starr's Amended Complaint

Starr's Amended Complaint asserts two causes of action for breach of contract, one for the 2013 Policy and one for the 2104 Policy. Starr contends that JT2 breached the Policies by failing to pay the additional premium of $22,563.00 for the 2013 Policy and $54,418.00 for the 2014 Policy, owed after payroll audit as required by the terms of the Policies.

#### B. JT2's Defenses

JT2 claims that Starr purposely misclassified JT2's labor force into class codes that are inconsistent with the work performed.

### IV. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56.

The court must determine based on the evidence presented whether there exists a genuine issue of material fact requiring trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-243 (1986). In determining whether such a question of fact is raised, the court must make all credibility assessments, resolve any ambiguities, and draw all inferences, in favor of the non-moving party, and ,may grant the motion only if the evidence, taken in that light, reflects that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d. Cir. 1997).

### V. ARGUMENT

#### A. Starr is Entitled to Summary Judgment on its Breach of Contract Claims

The elements necessary to obtain a breach of contract judgment are 1) a contract; 2) plaintiff's performance or excuse for nonperformance; 3) defendant's breach; and 4) resulting damages to plaintiff. *Reichert v. General Ins. Co.*, 68 Cal.2d 822, 830 (1968); *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Call.App.3d 1371, 1388 (1990); CACI 303 – Breach of Contract Essential Elements (Dec. 2016).

The evidence necessary to prove-up all of the elements required for judgment/summary judgment on Starr's breach of contract complaint are contained in this motion. Element 1 is satisfied: the contracts are the Policies. [SUF 1, 2, 3, 4, 5, and 6]. Element 2 is satisfied: Starr performed on the contracts by providing workers' compensation insurance to JT2. [SUF 6]. Element 3 is satisfied: JT2 breached the insurance contracts (i.e., the Policies) by failing to pay the additional premium owed after the payroll audits. [SUF 30]. Element 4 is satisfied: Starr has been damaged by the unpaid premium owed by JT2 after the payroll audits in the total amount of $76,891.00. [SUF 29 and 30].

As is further set forth below, there are no genuine issues of material fact to impede the granting of summary judgment. JT2's defenses are deficient legal theories that are defeated by California law and the terms of the agreements between the parties. There are simply no genuine issues of material fact to argue in this matter, and therefore summary judgment should be granted.

### B. The Re-Audits Were Conducted in Accordance with the Manual

The re-audits of the Policies were conducted pursuant to the rules and regulations set forth in the Manual, which governs the audit process and assignment of payroll to various class codes. [SUF 47]. The auditor conducted the audit by requesting payroll and other related documents from JT2 and meeting with JT2 to obtain any information the auditor needed. [Bianco Dec. ¶ 11]. Thereafter, the auditor submitted the results to Starr and Starr calculated the total annual premium for the audited period. [SUF Bianco Dec. ¶¶ 19 and 25].

Pursuant to the Manual, "N.O.C." "is an abbreviation of *not otherwise classified.* No classification so qualified shall be assigned in any case where another classification more accurately describes the enterprise or where the language of any classification so qualified prescribes other treatment." [SUF 20]. The Manual designates class codes 5183 and 5187 as "N.O.C." [SUF 21]. Essentially, these class codes only apply when no other classification more specifically describes the insured's operations.

As part of the re-audits, the auditor assigned codes to the various employees of JT2 as governed by the Manual. [SUF 23]. The auditor determined that JT2 was operating as a sewer construction company specializing in upgrading of sewer mains, remodeling of sewage systems and plumbing upgrades. [SUF 24]. The auditor believed that JT2 was not providing an accurate description of its operations. [SUF 25]. The auditor researched JT2 and confirmed that it was performing sewer work. [SUF 26]. The auditor's research showed that JT2 operates as a plumbing contractor, underground sewer, and watermain contractor. [SUF 27]. Its projects include the remodeling of schools and commercial/industrial buildings. Its operations include placing or replacing pipes, installing and hooking up of plumbing equipment such as toilets, sinks, showers, and drains. [SUF 28]. The auditor put the payroll for this type of work into class codes 5183 and 5187. [SUF 29]. The auditor found that JT2 also engages in underground sewer and watermain construction for municipalities. [Bianco Dec. ¶14]. The auditor determined that class codes 6307 (sewer construction – wage under $26 per hour), 6308 (sewer construction – wage over $26 per hour), 6315 (water mains or connections construction – wage under $26 per hour), and 6316 (water mains or connections construction – wage over $26 per hour), more accurately reflected the work performed by JT2's employees. [SUF 30]. Accordingly, the auditor moved payroll from 5183 and 5187 to the appropriate classifications. [SUF 31]. In addition, the auditor found that not all employees classified as clerical under class code 8810 were properly classified as some were outside sales or estimators. [SUF 32]. The auditor moved payroll from 8810 (clerical) to 8742 (salespersons). [SUF 33].

With respect to the initial audit of the 2013 Policy, the auditor found that JT2 did not properly segregate the payroll by class code so all payroll was assigned to the highest rated class pursuant to the Manual. [SUF 1]. For the re-audit of the 2013 Policy, JT2 went back through its payroll and properly segregated it by class code. [SUF 35].

With respect to the initial audit of the 2014 Policy, the auditor found that JT2 did not properly segregate the payroll by class code so all payroll was assigned to the highest rated class pursuant to the Manual. [Bianco Dec. ¶25]. For the re-audit of the 2014 Policy, JT2 went back

8

through its payroll and properly segregated it by class code for the first and second quarters of 2015, but did not do so the third and fourth quarters of 2014. [SUF 43]. Accordingly, all field payroll for those two quarters was assigned to the highest rated class codes of 6307 and 6308. [SUF 44]. JT2 requested additional time to segregate the payroll for the third and fourth quarters of 2014. [SUF 45]. The auditor allowed some additional time, but never received the properly segregate payroll for the third and fourth quarters of 2014. [SUF 46].

JT2 failed to properly maintain and submit the payroll in the form required by the Manual. The auditor followed the rules set forth in the Manual and Starr is not responsible for JT2's failure, nor is it required to remedy it by pursuing JT2 for the correct information.

**C. Claims of Alleged Prior Representations by JT2's Retail Broker about Different Class Code Rates are Inadmissible Given the Fully Integrated Insurance Agreements**

The unambiguous terms of a fully integrated agreement make alleged prior statements or representations regarding different or contradictory terms inadmissible parol evidence. *Masterson v. Sine*, 68 Cal.2d 222, 225 (1968); California Code of Civ. Proc. §1856.

An integrated agreement is one where the contract is the "final expression" of the parties' intentions with respect to the terms included therein. *Esbensen v. Userware Int'l Inc.*, 11 Cal.App.4th 361, 637 (1993). Whether a contract is fully integrated is a matter that should be determined as a matter of law. *Brawthen v. H&R Block, Inc.*, 28 Cal. App.3d 131, 137 (1972).

In determining whether an agreement is integrated several factors are usually considered: 1) whether the written agreement on its face appears to be a complete statement of the parties' agreement; 2) whether the parol evidence contradicts the written agreement (in which case it should not be considered at all); 3) whether any alleged "collateral oral agreement" might naturally be made as a separate agreement; and 4) whether the parol evidence is likely to mislead a jury. *Banco Do Brasil, S.A. v. Latian, Inc.*, 234 Cal.App.3d 973, 1002-1003 (1991).

In the instant case, the Policies are fully integrated. On their face, the Policies contain fully integrated language. The Policies each state: ". . . this policy, including all endorsements

forming a part thereof, constitutes the entire contract of insurance. No condition, provision, agreement, or understanding not set forth in this policy or such endorsements shall affect such contract or any rights, duties, or privileges arising therefrom." [SUF 3]. The Policies each also state: "The only agreements relating to this insurance are stated in this policy. The terms of the policy may not be changed or waived except by endorsement issued by us to be part of this policy." [SUF 4].

As for the second factor for determining integration, JT2's contention that its retail broker promised lower class code rates than the accepted proposal and Policies, directly contradicts the written contract terms and should not be considered.

As to the third factor, JT2's defense regarding alleged statements by its retail broker promising lower class code rates, is not one that could naturally be a supplemental or collateral agreement. Instead, it directly contradicts the written Policies and therefore should not be considered.

The fourth factor does not apply where the Court is considering this issue on summary judgment.

Once established, as in this case, that the Policies are fully integrated, parol evidence is inadmissible to add terms not consistent with the writing. *EPA Real Estate Partnership v. Kang*, 12 Cal.App.4th 171, 176-177 (1992). Extrinsic evidence may be utilized at times to explain or supplement terms of an integrated agreement, but only when such evidence is consistent with the terms of the written agreement. *EPA Real Estate*, 12 Cal.App.4th at 176-177. Here, JT2's defense about prior representations made by its retail broker that lower class code rates would be charged is directly contrary to the class code rates in the Policies, and therefore such extrinsic evidence is inadmissible.

Given that the Policies are filly integrated, the class codes and other rates are set forth explicitly therein, and California law holds that express, unambiguous contractual terms cannot be contradicted by extrinsic evidence, JT2s contentions regarding alleged prior statements made

by its retail broker of contrary class code pricing are inadmissible parol evidence, and JT2's defense must fail.

**D. Alternatively, Partial Summary Judgment Should be Granted as to JT2's Defenses**

Alternatively, partial summary judgment should be granted as to the identified defenses asserted by JT2, as a matter of law, so that the parties will not have to rehash these issues at trial if summary judgment is not granted outright.

Specifically, for the reasons set forth above, partial summary judgment should be granted as to JT2's First Affirmative Defense that the Amended Complaint fails to state a claim for relief. Starr alleged all of the elements of a breach of contract claim and supplied sufficient allegations to state a claim.

Additionally, partial summary judgment should be granted as to JT2's Second Affirmative Defense that the Amended Complaint is barred by the statute of limitations. California Code of Civil Procedure Section 337 provides a four year statute of limitations for an action upon any contract. The 2013 Policy was audited in October 2014, shortly after its expiration. [SUF 10]. Even assuming, *arguendo*, that the statute of limitations runs from the audit date (which Starr contends that it does not), the statute would run in October 2018. Starr commenced the instant action in February 2017, well within the applicable statute of limitations.

Partial summary judgment should be granted as to JT2's Third Affirmative Defense that the Amended Complaint is barred by waiver. Starr never accepted any monies from JT2 as payment in full for the 2013 Policy, and Starr's continued pursuit of the monies owed for the 2013 Policy since the re-audit belie any waiver argument.

Partial summary judgment should be granted as to JT2's Fourth Affirmative Defense that the Amended Complaint is barred by estoppel. The elements of equitable estoppel are: "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon

the conduct to his injury." *People v. Castillo*, 49 Cal.4th 145, 155 n. 10, 109 Cal.Rptr.3d 346, 230 P.3d 1132 (2010) (*citations omitted*). Starr and its outside auditor conducted the respective audits in accordance with the rules and regulations set forth in the Manual. [SUF 47]. JT2 failed to maintain its contemporaneous payroll records as required. Starr is not responsible for JT2's failure, nor is Starr required to remedy it by accepting JT2's continued re-classification of its payroll by class code.

Partial summary judgment should be granted as to JT2's Fifth Affirmative Defense that the Amended Complaint is barred by ratification. Starr and its outside auditor conducted the respective audits in accordance with the rules and regulations set forth in the Manual. [SUF 47]. JT2 failed to maintain its contemporaneous payroll records as required. Starr is not responsible for JT2's failure, nor is Starr required to remedy it by accepting JT2's never ending re-classification of its payroll by class code.

Partial summary judgment should be granted as to JT2's Sixth Affirmative Defense that Starr failed to mitigate its damages. Starr performed audits and re-audits of the Policies in compliance with the Manual. [SUF 47]. JT2 owes addition premium as a result of thereof, which it refuses to pay. There is nothing that Starr could have done to mitigate its damages and JT2 fails to allege any facts that support Starr's alleged failure to mitigate.

Partial summary judgment should be granted as to JT2's Seventh Affirmative Defense that JT2 fully performed its obligations. Starr never accepted any monies from JT2 as payment in full for the monies owed under the Policies. Furthermore, Starr's continued pursuit of the monies owed for the re-audits belie any argument that JT2 paid all monies due under the Policies.

Partial summary judgment should be granted as to JT2's Eighth Affirmative Defense that Starr is barred from any recovery because JT2 acted in good faith. JT2 failed to maintain its contemporaneous payroll records as required. Starr is not responsible for JT2's failure, nor is Starr required to remedy it by accepting JT2's never ending re-classification of its payroll by class code.

Partial summary judgment should be granted as to JT2's Ninth Affirmative Defense that Starr is barred from relief by the doctrine of unclean hands. The doctrine of unclean hands is a "maxim that `he who comes into equity must come with clean hands.'" *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). The doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Id*. Though the party against whom unclean hands is enforced need not have acted unlawfully, the court may only apply the doctrine where the party committed a "willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct." *Id*. at 815, 65 S.Ct. 993. "Any conduct that violates conscience, or good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine." *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 979, 90 Cal. Rptr.2d 743 (1999), *as modified on denial of reh'g* (Jan. 3, 2000).

Starr conducted the audits in compliance with the Manual and calculated the audit premiums pursuant to the terms of the Policies. JT2 has no evidence that Starr acted with unclean hands in the way in which it conducted the audits or calculated the final premium.

Partial summary judgment should be granted as to JT2's Tenth Affirmative Defense that Starr is barred from relief because Starr's acted were the proximate cause of its damages. As stated throughout this memorandum, it is JT2 failure to maintain its contemporaneous payroll records as required that caused any harm to JT2. Starr conducted the audits in compliance with the Manual and calculated the audit premiums pursuant to the terms of the Policies. None of Starr's action were the proximate cause of its damages. Starr's damages arise solely from JT2's failure to pay the additional premium due after the audits of the Policies.

Partial summary judgment should be granted as to JT2's Eleventh Affirmative Defense that JT2 fully paid and satisfied its obligations. Starr never accepted any monies from JT2 as payment in full for the monies owed under the Policies. Furthermore, Starr's continued pursuit of

the monies owed for the re-audits belie any argument that JT2 paid all monies due under the Policies.

Partial summary judgment should be granted as to JT2's Twelfth Affirmative Defense that Starr materially breached the terms of the Policies. Far from materially breaching the terms of the Policies, Starr fully complied therewith. It performed audits of the Policies. When JT2 disputed the audits, it re-audited the Policies. All of the audit premium calculations were done in accordance with the terms of the Policies and used the rates and charges set forth therein.

Partial summary judgment should be granted as to JT2's Thirteenth Affirmative Defense that JT2 substantially complied with the terms and conditions of the Policies. JT2 has not substantially complied with the terms and conditions of the Policies in that it has failed and refused to pay the additional premium due after the audits of the Policies. It would not be unjust and unfair to award Starr the additional premium due.

Partial summary judgment should be granted as to JT2's Fourteenth Affirmative Defense that JT2 believes Starr improperly calculated the audit premium. The audit premium calculation is set forth in detail in the Williams Dec., and was calculated in accordance with the terms of the Policies.

Partial summary judgment should be granted as to JT2's Fifteenth Affirmative Defense that any monied owed under the 2013 Policy is barred accord and satisfaction. Under California Commercial Code Section 3311, the acceptance of a check can function as satisfaction or discharge of a claim if (1) the check is tendered in good faith as full satisfaction of the claim; (2) the amount of the claim is unliquidated or subject to a bona fide dispute; and (3) the claimant obtained payment. Cal. Com. Code § 3311(a); see *Woolridge v. J.F.L. Electric, Inc.*, 96 Cal. App. 4th Supp. 52, 59 (2002) (Section 3311 applies to checks). In addition, the person against whom the claim is asserted must prove that the check or an accompanying written communication contains a "conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim." Cal. Com. Code § 3311(b).

Starr never accepted any monies from JT2 as payment in full for the 2013 Policy, and Starr's continued pursuit of the monies owed for the 2013 Policy since the re-audit belie any accord and satisfaction argument.

### VI. CONCLUSION

Bason on the above, summary judgment should be granted in favor of Starr against JT2 for the total additional premium owed of $76,891.00, plus prejudgment interest and costs, according to proof (and established by post-judgment motion and bill of costs, respectively).

Alternatively, partial summary judgment should be granted as to JT2's defenses.

DATED: July 30, 2021                     WOOD, SMITH, HENNING & BERMAN LLP

By:     /s/ Patrick S. Schoenburg

PATRICK S. SCHOENBURG


STARR INSURANCE HOLDINGS, INC.


By:     /s/ Ross M. Chinitz

ROSS M. CHINITZ

Attorneys for Plaintiff STARR INDEMNITY & LIABILTY COMPANY