1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT
9            EASTERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11 STARR INDEMNITY & LIABILITY COMPANY, | Case No. 1:17-cv-00213-JLT-BAM |
| 12 | ORDER REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT |
| 13 Plaintiff, | |
| 14 v. | |
| 15 JT2, INC. d/b/a Todd Companies, | (Thirty-Day Deadline to File Joint Case Management Statement) |
| 16 Defendant. | |
| 17 JT2, INC. d/b/a Todd Companies, | (Case to Remain Open) |
| 18 Third-Party Plaintiff, | |
| 19 v. | |
| 20 BUCKMAN-MITCHELL, INC., TODD WILLIAMS, and ROES 1-100, | |
| 21 Third-Party Defendants. | |
| 22 | |
| 23 | |

## I. INTRODUCTION

24

25    Starr Indemnity & Liability Company claims that JT2, Inc. d/b/a/ Todd Companies has

26 failed to pay premiums for a 2013 and 2014 worker's compensation insurance Policy. JT2 has

27 cross-complained against Buckman-Mitchel, Inc. and Todd Williams (together, the "Third Party

28 Defendants"), who served as JT2's insurance broker.

Starr has filed a motion for summary judgment on Counts I and II or partial summary judgment on the First through Fifteenth Affirmative Defenses in JT2's Amended Answer to the FAC. (Doc. 71.) JT2 opposes the motion. (Doc. 73.) Starr relied to the opposition (Doc. 74) and filed portions of the transcript of a 2021 deposition of JT2's designated expert, Neal Bordenave.[1] (Doc. 79.) For the reasons discussed below, the Court GRANTS Starr's motion for summary judgment on Count 1, DENIES Starr's motion for summary judgment on Count 2, and DENIES Starr's alternative motion for partial summary judgment on Count 2 Affirmative Defenses.[2]

## II. LEGAL STANDARD

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985); *Ambat v. City & Cnty. of San Francisco*, 757 F.3d 1017, 1031 (9th Cir. 2014). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.").

The movant always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy this burden by (1) presenting evidence that negates an essential element of the nonmoving party's case, or (2) demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

---

[1] Bordenave submitted both a Fed. R. Civ. P. 26 expert report and a declaration in support of JT2's opposition to Starr's motion for summary judgment.

[2] The Court does not reach the alternative motion on Count I Affirmative Defenses.

1987); *see also eOnline Glob., Inc. v. Google LLC*, 387 F. Supp. 3d 980, 985 (N.D. Cal. 2019) (citing *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513 (N.D. Cal. 1995)) (the moving party "must prove each element essential of the claims upon which it seeks judgment by undisputed facts" in order to succeed); *see also t'Bear v. Forman*, 359 F. Supp. 3d 882, 905 (N.D. Cal. 2019) (quoting *First Pacific Networks, Inc.,* 891 F. Supp. at 513) (the moving party's showing "must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.").

If the evidence offered in support of the motion establishes every essential element of the moving party's claim or defense, there is no need to offer evidence to negate or disprove matters on which the opposing party has the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 323. If the movant fails to discharge this initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159–60 (1970). If the moving party meets this initial burden, however, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586; *see also Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) (citing *Anderson*, 477 U.S. at 242, 252) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient."); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

The Court must assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249–50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987).

1    Although the party opposing summary judgment is entitled to the benefit of all reasonable

2    inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if

3    believed, would be sufficient to support a judgment for the nonmoving party." *Am. Int'l Grp., Inc.*

4    *v. Am. Int'l Bank*, 926 F.2d 829, 836–37 (9th Cir. 1991). In that regard, "a mere 'scintilla' of

5    evidence will not be sufficient to defeat a properly supported motion for summary judgment;

6    rather, the nonmoving party must introduce some 'significant probative evidence tending to

7    support the complaint.'" *Summers v. Teichert & Son, Inc.,* 127 F.3d 1150, 1152 (9th Cir. 1997).

8    When making this determination, the court must view all inferences drawn from the

9    underlying facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus.*

10   *Co.*, 475 U.S. at 587. "Credibility determinations, the weighing of the evidence, and the drawing

11   of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling

12   on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

13   In diversity actions such as the instant, the state law creating the right sued upon governs

14   issues such as the elements of the cause of action, measure of damages, applicable defenses, etc.

15   *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1065 (9th Cir. 2003), *as amended on denial of*

16   *reh'g* (Sept. 25, 2003).

17                              III. DISCUSSION

18   A.    Evidentiary Objections

19   Both parties have objected to evidence proffered by the other. In moving for or opposing

20   summary judgment, "[a] party may object that the material cited to support or dispute a fact

21   cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *see*

22   *also Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary

23   judgment, a party does not necessarily have to produce evidence in a form that would be

24   admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil

25   Procedure 56."); *see also Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (quoting

26   *Block*, 253 F.3d at 418–19) (same). Even if the non-moving party's evidence is presented in a

27   form that is currently inadmissible, such evidence may be evaluated on a motion for summary

28   judgment so long as the moving party's objections could be cured at trial. *See Burch v. Regents of*

1     *Univ. of California*, 433 F. Supp. 2d 1110, 1119–20 (E.D. Cal. 2006).

2        With respect to evidence submitted by declaration, "[a]n affidavit or declaration used to

3 support or oppose a motion must be made on personal knowledge, set out facts that *would be* [but

4 not necessarily are] admissible in evidence, and show that the affiant or declarant is competent to

5 testify on the matters stated." Fed. R. Civ. P. 56(c)(4) (emphasis added). Thus, in ruling on a

6 motion for summary judgment, the court considers only evidence that is admissible at trial. Fed.

7 R. Civ. P. 56(c).

8        The Court overrules both parties' objections in their entirety, as discussed below. To the

9 extent the Court does not rely on evidence objected to, these objections also are overruled as

10 moot. *See Am. Guard Servs., Inc. v. First Mercury Ins. Co.,* No. CV 15-9259 PA (PJWX),

11 2017 WL 6039975 (C.D. Cal. Apr. 14, 2017), *aff'd,* 741 F. App'x 407 (9th Cir. 2018).

12        1.     JT2's Objections to the Declaration of Kimberly Bianco

13            a.     Improper opinion (Fed. R. Evid. 701-702)

14       **JT2 objects to paragraphs 4-9, 12-16, 25, 28-29, and 32, on grounds of improper**

15 **opinion. (Doc. 73-2 at 2-8.)**

16        JT2 objects to fifteen statements by Bianco relating to: (i) the California Workers'

17 Compensation Uniform Statistical Reporting Plan – 1995, effective January 1, 2014 (hereinafter

18 the "Manual") and its class-code definitions as governing the audit and re-audit of the Policies,

19 (ii) JT2's failure to accurately describe its operations, (iii) JT2's failure to properly segregate

20 payroll, (iv) JT2's operation as a sewer construction company specializing in upgrading of sewer

21 mains, remodeling of sewage systems and plumbing upgrades, and as watermain contractor, and

22 (v) reclassification of JT2's payroll into classes 5183, 5187, 6307, 6308, 6315, 6316, pursuant to

23 the Manual.

24        Despite arguing that Bianco is offering improper expert opinion, JT2 has not demonstrated

25 that Bianco has been designated as an expert or that her statements were proffered as expert

26 opinion. (*See* Doc. 73-2 at 2-9.) Though Bianco discusses the requirements of "The California

27 Workers' Compensation Uniform Statistical Reporting Plan," the Court takes her statements to

28 mean that this is her understanding of the requirements of the Manual, rather than offering her

expert opinion. Because Bianco conducted the audits and re-audits, her testimony is based upon personal knowledge of the matters to which she testifies.

The record reflects Bianco's statements were made solely in her capacity as Starr's outside auditor and based upon personal knowledge of audits and re-audits of the Policies that she herself conducted. *See Los Angeles Times Commc'ns, LLC v. Dep't of Army*, 442 F. Supp. 2d 880, 886–87 (C.D. Cal. 2006) ("Generally, [Federal Rule of Evidence] 602 [Need for Personal Knowledge] requires that a witness' testimony be based on events perceived by the witness through one of the five senses . . . first-hand observation is the most common form of personal knowledge."). Personal knowledge may be acquired through one's job position and performance. *Id.* at 887. Moreover, "courts may allow lay witnesses to testify to opinions based on a combination of their personal observations regarding the incident in question and their specialized knowledge obtained through their vocation." *Id.*

Additionally, the instant objection is mere boilerplate to the extent it is unsupported by legal argument, and insufficient and overruled on that basis. *See Villery v. Jones*, No. 115CV01360DADHBKPC, 2021 WL 2227363, at *3 (E.D. Cal. June 2, 2021) (citing *AECOM Energy & Constr., Inc. v. Ripley*, No. CV175398RSWLSSX, 2018 WL 6266462, at *6 (C.D. Cal. Oct. 3, 2018)) ("Boilerplate objections of any type are improper in federal court."); *see also Duran v. Cisco Sys., Inc.,* 258 F.R.D. 375, 379 (C.D. Cal. 2009) (noting that "unexplained and unsupported boilerplate objections are improper"). Thus, the objection is **OVERRULED**.

b.   <u>Lack of foundation (Fed. R. Evid. 901-902, 1000-1004)</u>

**JT2 objects to paragraphs 4-9, 12-15, 25, 28-29, and 32 on grounds of lack of foundation. (Doc. 73-2 at 2-8.)**

JT2 objects to fourteen of Bianco's statements relating to: (i) her proper reliance upon: the Manual, (ii) her internet research and JT2's business operations, (iii) JT2's failure to segregate payroll, and (iv) the audits and re-audits of the 2013 and 2014 Policies including reclassification and re-assignment of payroll.

"A document which lacks a proper foundation to authenticate it cannot be used to support [or defend against] a motion for summary judgment." *Hal Roach Studios, Inc. v. Richard Feiner*

1   *& Co.,* 896 F.2d 1542, 1551 (9th Cir. 1989). "To be considered by the court, 'documents must be

2   authenticated by and attached to an affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e)

3   and the affiant must be a person through whom the exhibits could be admitted into evidence.' "

4   *Hal Roach Studios, Inc.,* 896 F.2d at 1550–51 (quoting *Canada v. Blain's Helicopters, Inc.*, 831

5   F.2d 920, 925 (9th Cir. 1987)).

6   "[O]bjections predicated upon Federal Rule of Evidence 901 are appropriate in the context

7   of a motion for summary judgment." *Burch*, 433 F. Supp. 2d at 1120. For evidence to be

8   admissible, Federal Rule of Evidence 901(a) requires a proper foundation be laid to authenticate

9   the item by "evidence sufficient to support a finding that the item is what the proponent claims it

10   is." *See Canada*, 831 F.2d at 925. Such a foundation may be laid by testimony of a witness who

11   has personal knowledge. Fed. R. Evid. 901(b)(1).

12   Bianco has testified to her personal knowledge that the documents appended to her

13   declaration, i.e. Exhibit "A" (the "Manual", Exhibit "B" (her internet research), Exhibit "C" (the

14   2013 Policy initial audit report), Exhibit "D" (the 2013 Policy re-audit report), Exhibit "E" (the

15   2014 Policy initial audit report), and Exhibit "F" (the 2014 Policy re-audit report) are true and

16   correct copies of what they purported to be. (*See* Doc. 71-9 at 1-5.) This is sufficient foundation

17   under Federal Rule of Evidence 901(b)(1). Additionally, the Manual appears to be a regulatory

18   document issued by the Worker's Compensation Insurance Rating Bureau of California, the

19   state's statistical agent, and self-authenticating on that basis. Fed. R. Evid. 902(5).

20   In any event, where a district court relies on an unauthenticated document that could be

21   authenticated at trial by a witness with competent personal knowledge, its reliance on that

22   document is harmless error. *See Hal Roach Studios, Inc.*, 896 F.2d at 1551. Even if the documents

23   appended to Bianco's declaration were unauthenticated, these documents could be authenticated

24   at trial by Bianco or another competent witness. Thus, objection is OVERRULED.

25            c.       Improper legal conclusion (Fed. R. Evid. 701-702)

26   **JT2 objects to paragraphs 4-9, 12-13, 15-16, 25, 28-29, and 32 on grounds of**

27   **improper legal conclusion. (Doc. 73-2 at 2-8.)**

28   JT2 objects to fourteen of Bianco's statements relating to: (i) the Manual as governing the

7

audit and re-audit of the Policies, (ii) JT2's inaccurate description of its operations, (iii) JT2's

failure properly to segregate payroll, (iv) JT2's operation as a sewer construction company

specializing in upgrading of sewer mains, remodeling of sewage systems and plumbing upgrades,

and watermain contractor, and (v) her reclassification of payroll into classes 5183, 5187, 6307,

6308, 6315, 6316, pursuant to the Manual.

As this Court has recognized:

> "Objections to evidence on the ground that the evidence is ... speculative ... vague and ambiguous, or constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself." *Carden v. Chenega Sec. & Prot. Serv., LLC,* 2011 WL 1807384, *3 (E.D. Cal. May 10, 2011) citing *Burch v. Regents of Univ. of Cal.,* 433 F.Supp.2d 1110, 1119–20 (E.D. Cal.2006) (recognizing that statements based on speculation or improper legal conclusions are not facts and will not be considered on a motion for summary judgment thus, "instead of challenging the admissibility of the evidence, lawyers should challenge its sufficiency").

*Arredondo v. Delano Farms Co.,* No. 1:09-CV-01247-LJO, 2012 WL 1232294, at *6 (E.D. Cal.

Apr. 12, 2012); *see also Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir.), *cert.*

*denied sub nom. San Diego Cnty. v. Sandoval*, 142 S. Ct. 711, 211 L. Ed. 2d 400 (2021) (citing

*Burch*, 433 F. Supp. 2d at 1119–20) (objections to evidence on the ground that the evidence is

irrelevant, speculative, argumentative, vague and ambiguous, or constitutes an improper legal

conclusion are all duplicative of the summary judgment standard itself); *US E.E.O.C. v. Placer*

*ARC*, 114 F. Supp. 3d 1048, 1052 (E.D. Cal. 2015) ("Because the court does not rely on irrelevant

evidence when considering motions for summary judgment, such objections are redundant to the

practice of summary judgment itself.").

The court always considers the relevance of the facts as it considers the parties'

arguments, and the court must take all disputed facts in the light most favorable to the non-

moving party, but the court need not rule on the admissibility of such facts when no reason has

been shown why they would not be admissible at trial. *See Sandoval*, 985 F.3d at 666.

Accordingly, JT2's objection that the declarant's testimony states a legal conclusion fails. The objection

is OVERRULED.

d. <u>Argumentative</u>

**JT2 objects to paragraphs 4-9, 12-16, 25, 28-29, and 32 on grounds they are argumentative. (Doc. 73-2 at 2-8.)**

JT2 objects to fifteen of Bianco's statements relating to: (i) the Manual as governing the audit and re-audit of the Policies, (ii) JT2's failure to accurately describe its operations, (iii) JT2's failure properly to segregate payroll, (iv) JT2's operation as a sewer construction company specializing in upgrading of sewer mains, remodeling of sewage systems and plumbing upgrades, and watermain contractor, and (v) her reclassification of payroll into classes 5183, 5187, 6307, 6308, 6315, 6316, pursuant to the Manual.

For the reasons stated, objections to evidence on the ground that the evidence is argumentative are duplicative of the summary judgment standard and fail on that basis. *Sandoval*, 985 F.3d at 665 (citing *Burch*, 433 F. Supp. 2d at 1119–20). Accordingly, JT2's objection that the declarant's testimony is argumentative fails, and the objection is OVERRULED.

e. <u>Vague and Ambiguous</u>

**JT2 objects to paragraph 25 on grounds it is vague and ambiguous. (Doc. 73-2 at 7.)**

JT2 objects to Bianco's statement that the 2014 audit had the "same issues as the initial audit of the 2013 Policy[,]" prompting reclassification of payroll, is "vague and ambiguous."

Again, objections to evidence on the ground that the evidence is vague and ambiguous are duplicative of the summary judgment standard. *Arredondo*, 2012 WL 1232294, at *6; *Sandoval*, 985 F.3d at 665 (citing *Burch*, 433 F. Supp. 2d at 1119–20). Even if that were not the case, the "issues" Bianco raised in her 2013 Policy initial audit report appended to her declaration as Exhibit "C" thereto, are readily apparent therein. Accordingly, JT2's objection that the declarant's testimony is vague and ambiguous fails, and the objection is OVERRULED.

2. <u>JT2's Objections to the Declaration of Harrington Williams</u>

a. <u>Improper opinion (Fed. R. Evid. 701-702)</u>

**JT2 objects to paragraph 4 on grounds of improper opinion. (Doc. 73-3 at 2.)** JT2 objects that Williams's testimony "Commercial plumbing companies often have employees who perform different tasks, so they may have many different class codes applicable to their workers

1  compensation insurance policies[,]" is an improper opinion. (Doc.73-3 at 2.)

2      For the same reasons discussed above, Williams's testimony is not improper opinion. JT2

3  has not argued or demonstrated that Williams has been designated as an expert and that his

4  objected to statements were offered as expert opinion. Because Williams is employed as Assistant

5  Vice-President of Operations by Star Insurance Holdings, Inc., the parent company of Starr, and

6  in that capacity reviewed the instant Policies, audits, and re-audits, his testimony is based upon

7  personal knowledge.

8      The record reflects Williams's objected to statement was made solely in his capacity as

9  Assistant Vice-President of Starr Insurance Holdings, Inc., and based upon personal knowledge of

10  Policies, audits, and re-audits that he himself reviewed. *See Los Angeles Times Commc'ns, LLC*,

11  442 F. Supp. 2d at 886–87. As noted, "courts may allow lay witnesses to testify to opinions based

12  on a combination of their personal observations regarding the incident in question and their

13  specialized knowledge obtained through their vocation." *Id.* Additionally, the objection is mere

14  boilerplate to the extent it is unsupported by legal argument, and insufficient and overruled on

15  that basis. *See Villery*, 2021 WL 2227363, at *3. Thus, the objection is OVERRULED.

16          b.      Lack of foundation (Fed. R. Evid. 901-902, 1000-1004)

17      **JT2 objects to paragraph 4 on grounds of lack of foundation. (Doc. 73-3 at 2.)**

18      JT2 objects to Williams's failure to lay a proper foundation for his above noted testimony.

19  (Doc. 73-3 at 2.)

20      A proper foundation may be laid by testimony of a witness who has personal knowledge.

21  Fed. R. Evid. 901(b)(1). Williams's testimony is not without proper foundation. As noted,

22  Williams is employed an Assistant Vice-President of Operations by Star Insurance Holdings, Inc.,

23  the parent company of Starr, and in that capacity reviewed the instant Policies, audits, and re-

24  audits. His testimony is based upon personal knowledge. Williams states his responsibilities as

25  Assistant Vice-President of Operations include "the billing and review of all audits that are

26  performed on policies issued by Starr." (Doc. 71-4 at 1-2); *see also Los Angeles Times*

27  *Commc'ns, LLC*, 442 F. Supp. 2d at 886–87. This is sufficient foundation under Federal Rule of

28  Evidence 901(b)(1).

1  Relatedly, Williams testified to his competent personal knowledge that the documents

2  appended to his declaration, e.g., Exhibit "A" (the 2013 Policy), Exhibit "B" (the 2014 Policy),

3  Exhibit "C" (the final premium statement for the 2013 Policy), Exhibit "D" (the final premium

4  statement for the 2014 Policy) are true and correct copies of what they purported to be. (*See* Doc.

5  71-4 at 1-6.) Williams also testified to his competent personal knowledge of the above noted true

6  and correct audit and re-audit documents appended to the declaration of Bianco (e.g., Exhibits "C-

7  F" thereto). (*Id.*) The objection is OVERRULED.

8        c.   <u>Argumentative</u>

9  **JT2 objects to paragraph 4 on grounds it is argumentative. (Doc. 73-3 at 2.)**

10  JT2 objects that Williams's testimony above noted testimony is argumentative. (Doc. 73-3

11  at 2.)

12  The objection is OVERRULED. As discussed above, objections to evidence on the ground

13  that the evidence is argumentative are duplicative of the summary judgment standard itself. *See*

14  *Sandoval*, 985 F.3d at 665. Thus, the objection lacks merit and is OVERRULED.

15        d.   <u>Relevance (Fed. R. Evid. 401-402)</u>

16  **JT2 objects to paragraphs 5-7, and 9-12 for lack of relevance. (Doc. 73-3 at 2-5.)**

17  JT2 objects that Williams's testimony is irrelevant relating to: (i) class code rates, credits

18  and discounts applicable to a worker's compensation insurance premium, (ii) the terms and

19  conditions contained in the Policies, and (iii) estimated and final premium payments under the

20  Policies. This is so, JT2 argues, because the instant motion does not raise such matters, but only

21  whether Starr properly classified various job positions into the proper class codes, and the terms

22  of the Policies speak for themselves. As discussed above, objections to evidence on the ground

23  that the evidence is irrelevant are duplicative of the summary judgment standard itself. *See*

24  *Sandoval*, 985 F.3d at 665. Thus, the objection lacks merit and is OVERRULED.

25      3.   <u>STARR's Objections to the Declaration of JT2's Expert, Neal Bordenave</u>

26        a.   <u>Improper Expert Opinion (Fed. R. Evid. 702, 703)</u>

27  **Starr objects to the declaration of Neal Bordenave in its entirety, on grounds of**

28  **inadmissible expert opinion. (Doc. 74-6 at 1-2.)**

1    Starr objects to Bordenave's entire declaration on grounds that Bordenave lacks the

2   experience, training, and background to testify as an expert witness in areas of workers'

3   compensation insurance policy audits, the conduct of the auditor, the audit process, the results of

4   the audit, or the calculation of premium due after audit. (Doc. 74-6 at 2.)

5    The Court, given the facts and evidence now before it, is unpersuaded that Bordenave

6   lacks the experience, training, and background to testify as an expert witness on matters raised by

7   the instant motion. Bordenave represents his decades long work in the insurance industry; his

8   extensive experience transacting and teaching workers compensation insurance coverage, rating

9   and audits; and his many years consulting and testifying as an expert.

10    The Court observes Bordenave's Rule 26 Report, which reflects that Bordenave was

11   retained "to review the workers compensation audit dispute between JT2 and plaintiff Starr

12   Indemnity & Liability Co. (STARR) for workers compensation insurance policies insured by

13   STARR to JT2 for policy years 2013-2014 and 2014-2015 for compliance with industry customs

14   and practices." (Doc. 73-7 at 35.) Bordenave represents that he has worked in the insurance

15   industry for more than 33 years, including as an agent/broker, executive, educator, and consultant.

16   (*See* Doc. 73-7 at 37-39.) Bordenave represents that:

17
> I have been extensively involved as a broker/agent in transacting
18
> California Workers Compensation Insurance including program
> structure, rate by class code accuracy, workers compensation audit
19
> reviews and disputes directly with the insurance carriers and the
> California Workers Compensation Insurance Rating Bureau.
20
> Additionally, Workers Compensation coverage, rating and audits is
> part of the curriculum I teach as faculty at California State
21
> University – Chico, College of Business in the Risk, and Insurance
> Course. In the course of my career, I have transacted and reviewed
22
> hundreds, if not thousands, of workers compensation insurance
> policies as a retail and wholesale insurance broker/agent.

23
24   (Doc. 73-7 at 38.) Bordenave further represents that:

25
> I have consulted and been retained as an insurance expert over three
> hundred times since 2009, I have testified approximately eighty-
26
> eight (88) times in Trial, Deposition, and Arbitration proceedings.

27   (*Id.*)    Thus the objection lacks merit and is OVERRULED.

28   ///

B.      Breach of Contract Counts I and II

Counts I and II allege that JT2 breached the 2013 and 2014 Policies, respectively, by failing to pay premiums due, including audit premiums. (FAC, ¶¶ 38–49.) In response, JT2 raises Starr's failure to perform under the Policies and asserts affirmative defenses based upon Starr's failure to audit and re-audit the Policies in good faith pursuant to their terms and the Manual.  (Doc. 26 at 8-9); *see also Alcini v. NorthWestern Mut. Life Ins. Co*., No. CV 08-2889-VBF(AJWX), 2008 WL 11336831, at *7 (C.D. Cal. Sept. 29, 2008) (covenant of good faith and fair dealing implied into breach of contract claim); *Dependable Highway Express, Inc. v. RIM Logistics, Ltd*., No. CV184261SJOAGRX, 2019 WL 988680, at *10 (C.D. Cal. Jan. 28, 2019) (citing *Celotex*, 477 U.S. at 324) (denying summary judgment where genuine issue whether plaintiff performed the contract in good faith).

Starr's instant motion relates to the disputed physical audits and re-audits of the 2013 and 2014 Policies conducted by Bianco, Starr's outside auditor. The parties dispute (1) whether JT2, in its Policy estimates, misrepresented the nature of its operations as being limited to work as a plumbing contractor, (2) whether JT2 provided Bianco with properly segregated payrolls, i.e. payrolls that included the appropriate "class code" by employee for project work performed, and (3) whether Bianco conducted the audits and re-audits of the 2013 Policy and the 2014 Policy in good faith according to their terms and the Manual.

Starr asserts that (1) Bianco properly conducted her physical audits and re-audits of the 2013 and 2014 Policies, (2) Bianco correctly found that JT2 operated as a plumbing contractor, sewer contractor, and water main contractor, (3) Bianco correctly found that JT2 failed properly to segregate payroll for the 2013 Policy initial audit, the 2014 Policy initial audit, and the 2014 Policy re-audit (third and fourth quarters), (4) Bianco used JT2's exact segregated payroll by class code per employee for the 2013 Policy re-audit, and (5) JT2 breached the Policies by failing to pay additional re-audit premiums of $22,563.00 for the 2013 Policy and $54,418.00 for the 2014 Policy. (*See* Doc. 71-16 at 2.)

JT2 responds that (1) Bianco was not fully informed about its operations and work at the time she conducted the audits and re-audits, (2) Bianco's audits and re-audits did not comply with

13

insurance industry norms and the Policies' implied covenant good faith and fair dealing, (3) JT2

provided Bianco with sufficient information to classify its employee payroll, (4) Bianco's audits

and re-audits misclassified and over-classified JT2's labor force into higher risk and more

expensive class codes that are inconsistent with the work performed, (5) Starr has accepted JT2's

payment of $250,419 as the premium due on the 2013 Policy, (6) Starr has accepted JT2's

payment of $342,047 as the premium due on the 2014 Policy, and (7) Starr is owed nothing

further under the Policies.

As noted, Starr's burden on the motion for summary judgment is to demonstrate

affirmatively that there is no genuine dispute of material fact as to each element of its claims for

relief, entitling it to judgment as a matter of law. To prevail on a breach of contract claim, a

plaintiff must show: "(1) the contract, (2) plaintiff's substantial performance or excuse for

nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiffs." *Orcilla v.*

*Big Sur, Inc.*, 244 Cal. App. 4th 982, 1004 (2016), *as modified* (Mar. 11, 2016) (citing *Careau &*

*Co. v. Sec. Pac. Bus. Credit, Inc.,* 222 Cal. App. 3d 1371, 1388 (1990)); *see also Yazdi v. Aetna*

*Life & Cas. (Bermuda) Ltd.*, No. CV 18-08345-CJC(SSX), 2018 WL 6443090, at *2 (C.D. Cal.

Nov. 1, 2018) (same). When a plaintiff's "failure to perform a contractual obligation constitutes a

material breach of the contract, the other party may be discharged from its duty to perform under

the contract." *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011).

"A bedrock principle of California contract law is that '[h]e who seeks to enforce a

contract must show that he has complied with the conditions and agreements of the contract on

his part to be performed.'" *Brown v. Dillard's, Inc*., 430 F.3d 1004, 1010 (9th Cir. 2005) (quoting

*Pry Corp. of Am. V. Leach*, 177 Cal. App. 2d 632, 639 (1960)). The nonperformance or breach by

a plaintiff must be material to preclude the claim for breach of contract. *Brown*, 192 Cal. App. 4th

at 277. Whether a breach or failure to perform is material is generally a question of fact, but "if

reasonable minds cannot differ on the issue of materiality, the issue may be resolved as a matter

of law." *Hitz Ent. Corp. v. Mosley*, No. CV 17-1317-MWF (SKX), 2018 WL 2722512, at *4

(C.D. Cal. Apr. 10, 2018) (quoting *Brown*, 192 Cal. App. 4th at 278) (citing *Ins. Underwriters*

*Clearing House, Inc. v. Natomas Co.*, 184 Cal. App. 3d 1520, 1526–1527 (1986)). Breach or

1   nonperformance is material when it "frustrate[s] the purpose of the contract." *Superior Motels,*

2   *Inc. v. Rinn Motor Hotels, Inc.*, 195 Cal. App. 3d 1032, 1051 (1987).

3       "[There] is an implied covenant of good faith and fair dealing in every contract [including

4   insurance policies] that neither party will do anything which will injure the right of the other to

5   receive the benefits of the agreement." *Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d

6   1136, 1172 (S.D. Cal. 2022) (citing *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 573 (1973))

7   (quoting *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 658 (1958)); *see also* <u>*Farrar v.*</u>

8   <u>*Am. Nat'l Prop. & Cas. Co.*</u>, No. 115CV01177TLNSKO, 2019 WL 2369930, at *11 (E.D. Cal.

9   June 5, 2019) (same);*Archdale v. Am. Internat. Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449,

10  463 (2007) (same); *Markel Am. Ins. Co. v. Fitt*, No. 05CV1337 IEG (AJB), 2007 WL 9776555, at

11  *8 (S.D. Cal. Feb. 5, 2007) ("California contract law implies a covenant of good faith and fair

12  dealing, 'as a supplement to the express contractual covenants, to prevent a contracting party from

13  engaging in conduct that frustrates the other party's rights to the benefits of the agreement.").

14      The covenant of good faith and fair dealing is often applied "in situations where one party

15  is invested with a discretionary power affecting the right of another. Such power must be

16  exercised in good faith." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342,

17  371–72 (1992). "For the insurer to fulfill its obligation not to impair the right of the insured to

18  receive the benefits of the agreement, it […] must give at least as much consideration to the

19  [insured]'s interests as it does to its own." *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 818–

20  19 (1979) (citing *Silberg v. Cal. Life Ins. Co.*, 11 Cal. 3d 452, 460 (1974)). Even so, "[t]he

21  implied covenant of good faith and fair dealing does not impose substantive terms and conditions

22  beyond those to which the parties actually agreed." *Id.* (quoting *Avidity Partners, LLC v.*

23  *California*, 221 Cal. App. 4th 1180, 1204 (2013)). "Thus, '[t]he implied covenant of good faith

24  and fair dealing rests upon the existence of some specific contractual obligation.'" *Id.* (quoting

25  *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683–684 (1988)).

26      1.   <u>No Genuine Dispute the Policies were Valid Contracts Governed by the Manual</u>

27      The Court finds no genuine dispute that the Policies were valid contracts, enforceable on

28  the terms and conditions therein, governed by the Manual. (Starr's Statement of Undisputed Facts

(Doc. 71-1, hereinafter "SUF") Nos. 1-4, 17; 19-21; JT2's Response to SUF (Doc. 73-1, hereinafter "RSUF") Nos. 1-4, 17, 19-21); *see also Dependable Highway Express, Inc.,* 2019 WL 988680, at \*5 ("Neither Plaintiff nor Defendant dispute that a valid contract existed before the performance by either party. . . Thus, there is no genuine dispute that a valid contract once existed between the parties.").

Particularly, the Court finds the following material facts to be without genuine dispute:

- Starr issued the Policies to JT2 covering policy periods July 31, 2013 to June 22, 2014, and June 22, 2014 to June 22, 2015. (SUF and RSUF Nos. 1, 2; *see also* Doc. 71-4 at 3; Docs. 71-5, 71-6.)

- Each Policy, including all endorsements thereto, is the entire contract of insurance, which may not be changed or waived except by endorsement thereto issued by Starr. (SUF and RSUF Nos. 3, 4; *see also* Doc. 71-4 at 23; Doc. 71-5 at 22, 32; Doc. 71-6 at 23, 35.)

- The Manual governs worker's compensation policies and audits. (SUF and RSUF No. 17; *see also* Doc. 71-5 at 17, 27; Doc. 71-6 at 17, 27; Doc. 71-9 at 2; Doc. 71-10.)

- The initial premium paid under the Policies by JT2 was an estimated premium based on JT2's estimate of its payroll per class code. (SUF and RSUF No. 7.)

- The final premium under each Policy is determined after the Policy ends by a physical audit, using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by the Policy. (SUF and RSUF Nos. 1-4, 17, 19-21; *see also* Doc. 71-4 at 3; Doc. 71-5 at 26, 32; Doc. 71-6 at 27, 35.)

- A "physical audit" under the Policies is "an audit of payroll, whether conducted at the policyholder's location or at a remote site, that is based upon an auditor's examination of the policyholder's books of accounts and original payroll records (in either electronic or hard copy form) as necessary to determine and verify the exposure amounts by classification." (SUF and RSUF Nos. 1-4, 17, 19-21; *see also* Doc. 71-10 at 10; Doc. 71-5 at 15; Doc. 71-6 at 15.)

- Starr may examine and audit all JT2's records that relate to the Policy [including] ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data, (SUF and RSUF Nos. 1-4, 17, 19-21; *see also* Doc. 71-4 at 3; Doc. 71-5 at 26; Doc. 71-6 at 27.)

- The Manual provides definitions for each class code; work "Not Otherwise Classified" (i.e. "NOC"); and employees receiving remuneration in two or more class codes (SUF and RSUF Nos. 19-20); the Manual designates (plumbing) class codes 5183 and 5187 as "NOC" (SUF and RSUF No. 21).

- If JT2's actual exposures are not properly described by those classifications, Starr will assign proper classifications, rates and premium basis by endorsement to the Policy. (SUF and RSUF Nos. 1-4, 17, 19-21; *see also* Doc. 71-4 at 3; Doc. 71-5 at

26; Doc. 71-6 at 27.)

- If JT2 fails to keep complete and accurate records of the remuneration earned by all officers and employees in sufficient detail to permit the proper classification of payroll in accordance with the provisions contained herein and to make them available for examination by Starr, the total remuneration earned shall be assigned to the highest rated classification describing any part of the work. (SUF and RSUF Nos. 1-4, 17, 19-21; *see also* Doc. 71-10 at 17.)

- JT2 agreed to remit payment of premiums and surcharges, including audit premiums, in consideration for Starr's provision of insurance coverage to Defendant. (SUF and RSUF No. 5.)

2.  <u>Count I - No Genuine Dispute of Material Fact that Starr is Entitled to Summary Judgment on Count I</u>

a.  <u>Worker's Compensation Coverage</u>

The Court finds no genuine dispute that Starr provided the worker's compensation insurance coverage afforded by the 2013 Policy. (SUF and RSUF No. 6; *see also* Doc. 26 at ¶¶ 40, 46.)

b.  <u>Physical Audit and Re-Audit</u>

The parties dispute whether the initial audit and subsequent re-audit of the 2013 Policy were performed in good faith. As discussed below, there is a genuine dispute whether Starr conducted the initial audit properly and in good faith. However, there is no genuine dispute as to the good faith and propriety of the re-audit. Moreover, there is no genuine dispute that Starr may rely upon its re-audit of the 2013 Policy as an independent basis for summary judgment on Count I.

(1)  <u>2013 Policy Initial Audit</u>

Bianco's October 13, 2014 initial audit of the 2013 Policy raises a genuine dispute whether her reclassification and reassignment of payroll was a good faith audit, consistent with the Policy and the Manual. Bianco conducted internet research into JT2's operations and determined JT2's payroll estimates and payroll submitted were not properly segregated by class code for the work performed by each employee. Bianco determined that JT2 operated as a plumbing contractor, underground sewer contractor, and water main contractor; she reclassified and reassigned the payroll to the highest (sewer) class codes. (SUF Nos. 3, 11, 24-26, 28-31; *see*

1   *also* Doc. 71-9 at 3; Doc. 71-10 at 17; Doc. 71-12 at 2.)

2          JT2 asserts the internet research is inadmissible hearsay, an improper basis for

3   classification under the Policy and Manual, and not reflective of JT2's overall operations during

4   the term of the Policy as a construction contractor specializing in concrete, grading, paving,

5   plumbing, utilities and demolition services. (RSUF No. 26; Doc. 73 at 18-19 citing JT2's

6   Additional Disputed Material Fact ("ADMF") Nos. 44, 45; Doc. 73-6 at 2, 4-5; *see also* Doc. 71-

7   10 at 11, 14-15, 18-19, 23.)

8          The Court finds that Starr has not demonstrated the internet research as hearsay evidence,

9   could be admissible evidence properly considered at summary judgment. *See Burch*, 433 F. Supp.

10   2d at 1121 (explaining that a motion for summary judgment may not be supported by hearsay);

11   Fed. R. Evid. 801-802; *cf. JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110

12   (9th Cir. 2016) (noting that "at summary judgment a district court may consider hearsay evidence

13   submitted in an inadmissible form, so long as the underlying evidence could be provided in an

14   admissible form at trial, such as by live testimony."); *Cherewick*, 578 F. Supp. 3d at 1157 (citing

15   Fed. R. Civ. P. 56(c)(4)). "[H]earsay evidence in Rule 56 affidavits is entitled to no weight."

16   *Scosche Indus., Inc. v. Visor Gear Inc.*, 121 F.3d 675, 681 (Fed. Cir. 1997).

17          Moreover, Starr has not demonstrated that Bianco's internet proffer is evidence of JT2's

18   operations during the entire term of the 2013 Policy. Notably, the internet research references

19   only one project during the 2013 Policy term. (*See* Doc. 71-11 at 2.) That project refers to JT2's

20   state licensure as a General Engineering Contractor, Plumbing (*id.* at 2, 4), and purports to list a

21   building permit for a plumbing project that included permitted sewer work (*id.*). The internet

22   research also is not inconsistent with the representations of JT2's president, James Todd, that JT2

23   performs plumbing work on and construction of sewer and water lines.  (*See* Doc. 73-6 at 2.)  The

24   internet research alone is not evidence that JT2 conducted business operations as a sewer

25   contractor and water main contractor.

26          Also, JT2's expert, Neil Bordenave, opines that Bianco's initial audit was not conducted

27   in accordance with the 2013 Policy, and was instead a bad faith attempt to increase the premium

28   due thereunder. (RSUF No. 11.) Bordenave, in his Rule 26 Report, states that:

> [I]n my review of the file, JT2 provided detailed payroll and classification information for each employee at the request of the auditors who arbitrarily rejected the class codes used by JT2 and inappropriately assigned the highest-class code rate creating significant and artificial additional premiums due.

(Doc. 73-7 at 35-36); *see also Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1318 (9th Cir. 1985) ("Expert opinion is admissible and may defeat summary judgment if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit, even though the underlying factual details and reasoning upon which the opinion is based are not."); *see also* Fed. R. Evid. 702, 703; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993); Fed. R. Civ. P. 56(c)(4). Relatedly, Bordenave represents that he also reviewed unspecified discovery responses (Doc. 73-5 at 2), and other documents in the case (Doc. 73-7 at 39), to arrive at his opinions.

Bordenave further opines that Bianco did not act reasonably and in good faith in determining the nature of JT2 operations and project work because she "undertook no efforts to speak in depth with JT2 personnel or its workforce[,]" (Doc. 73-5 at 5) and "did not discuss JT2's operations with the principal of JT2, James W. Todd II, ("Jim Todd") any other executive, or any supervisor[,]" (*id.* at 6). Bordenave, while observing that JT2 provides plumbing services on sewer construction projects and water main lines (*see* Doc. 73-5 at 6; Doc. 73-6 at 2), found that "the over whelming majority of JT2's operations include installing general plumbing works[,]" (Doc. 73-5 at 6).

To the extent Bianco also found that JT2's subcontractors could not have performed all underground sewer and water main construction because "the subcontractors cost was not in line with the size of the field payroll[,]" (Doc. 71-12 at 3; *see also id.* at 8-9; Doc. 71-13 at 3), Starr has not proffered any facts underlying this determination or its methodology.

### (2)   The 2013 Policy Re-Audit

In contrast, there is no genuine dispute that Bianco's November 5, 2015 re-audit of the 2013 Policy, and resulting reclassification and reassignment of payroll, was a good faith audit, consistent with the Policy and the Manual. The record reflects that JT2 disputed the results of Bianco's 2013 initial audit. (SUF and RSUF No. 15.) Bianco conducted a physical re-audit of the

1   2013 Policy on November 5, 2015. (SUF and RSUF No. 16; *see also* Doc. 71-13 at 2.) Starr

2   supports the 2013 re-audit with Bianco's representation that:

> During the re-audit of the 2013 Policy, JT2 provided a payroll breakdown, by class code, as required by the Policy. I was able to verify the payroll breakdown, by class code, provided by JT2 during the re-audit of the 2013 Policy, I used its numbers to finalize the re-audit and submitted the results so that Starr could calculate the final premium.

7   (Doc. 71-9 at 4; *see also* Doc. 71-13.)

8         Bianco's 2013 re-audit report shows that: (i) she reclassified payroll not shown on the

9   2013 policy estimates to sewer construction class codes 6307 and 6308, and water mains or

10  connections construction class codes 6315, 6316, and (ii) she reassigned clerical office payroll to

11  outside sales payroll for outside estimators. (*See* Doc. 71-12 at 2; Doc. 71-13 at 2, 5-6.)

12        JT2 does not proffer facts disputing Bianco's reliance upon the classified payroll that JT2

13  itself provided to her, or the results of the re-audit based thereon. (*See* SUF and RSUF Nos. 35-

14  37.) Instead, JT2 argues merely an inference of such a dispute arising from a comparison of the

15  Bianco's 2013 initial audit report and her 2013 re-audit report. JT2 does not identify facts of

16  where and how this inference is raised by comparing the two reports. (*See* RSUF Nos. 36, 37); *see*

17  *also Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997) ("Conclusory

18  allegations of collusion, without factual support, are insufficient to defeat summary judgment.")

19  The Court is unable to discern facts supporting such an inference from a comparison of the 2013

20  initial audit and re-audit reports.

21        JT2's expert, Bordenave, surmises the re-audit was "contrived . . . rather than a good faith

22  audit" because the actual exposure contained in the re-audit report is the same as in the initial

23  audit report. (Doc. 73-5 at 7-8.) But Bordenave's surmise alone cannot avoid summary

24  disposition. *Ortiz v. Alvarez*, 341 F. Supp. 3d 1087, 1107 (E.D. Cal. 2018) (citing *Arpin v. Santa*

25  *Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001)) ("[c]onclusory allegations

26  unsupported by factual data are insufficient to defeat [defendants'] summary judgment motion.").

27        Bordenave also opines that Starr was bound to the original rates promised by BMI.

28  (ADMF No. 29; *see also* Doc. 73-5 at 9.) However, he fails to point to specific facts and authority

20

1   showing that BMI could bind Starr to unspecified payroll classifications and rates not included in

2   the Policy. (*Id.*; *see also* SUF and RSUF Nos. 3, 4; *see also* Doc. 71-4 at 23; Doc. 71-5 at 22, 32;

3   Doc. 71-6 at 23, 35.)

4         The Court finds there is no genuine dispute that Bianco used JT2's own segregated payroll

5   numbers in her 2013 re-audit report, consistent with the 2013 Policy and the Manual. (SUF and

6   RSUF Nos. 35, 36, 37); *see also Jefferson Block 24 Oil & Gas, L.L.C. v. Aspen Ins. UK Ltd.*, 652

7   F.3d 584, 589 (5th Cir. 2011) (when contract language is unambiguous, the court discerns parties'

8   intent "as a matter of law, and summary judgment is thus appropriate"); *F.B.T. Prods., LLC v.*

9   *Aftermath Recs.*, 621 F.3d 958, 963–965 (9th Cir. 2010) (contract language defining "records

10  sold" unambiguous).

11        Although JT2, as the party opposing summary judgment, is entitled to the benefit of all

12  reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence

13  which, if believed, would be sufficient to support a judgment for the nonmoving party." *American*

14  *Intern. Group, Inc.*, 926 F.2d at 836–37. The nonmoving party must "go beyond the pleadings"

15  and by "the depositions, answers to interrogatories, and admissions on file," designate "specific

16  facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quoting Fed.

17  R. Civ. P. 56(e)); *see also Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497–498 (9th Cir. 2015)

18  (court may disregard plaintiff's self-serving declaration in opposition to summary judgment only

19  if it states conclusions rather than admissible evidence).

20                    c.    JT2's Breach and Starr's Damages

21        The Court finds no genuine dispute that Starr calculated the 2013 final additional premium

22  due based upon the 2013 re-audit report and the undisputed terms and conditions of the Policy

23  and Manual, and thereupon assessed a final premium balance due of $22,563.00. (SUF and RSUF

24  Nos. 34, 39, 47-48, 52-53; *see also* Doc. 71-4 at 5.)  The Court also finds no genuine dispute that

25  JT2 was provided with the revised 2013 Policy audit result and demand for payment of the

26  $22,563.00 additional premium owed, which JT2 has not paid. (SUF and RSUF 52, 53.)

27                    d.    Starr is Entitled to Summary Judgment on Count I

28        For the reasons stated, Starr is entitled to summary judgment on Count I.  JT2's opposition

1   showing does not demonstrate that *reasonable persons would disagree* on whether the facts

2   claimed by Starr are true, so as to "require a jury or judge to resolve the parties' differing versions

3   of the truth." *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983); *see also Anderson*,

4   477 U.S. at 249–250.  Additionally, material facts underlying JT2's Affirmative Defenses are not

5   genuinely in dispute as to Count I, for the reasons stated, and given JT2's failure otherwise to

6   proffer supporting admissible evidence. *See* Doc. 73 at 25-26); Fed. R. Civ. P. 56(c)(e).

7         As noted, material facts are those necessary to the proof or defense of a claim and are

8   determined by reference to the substantive law. *See Nat'l Am. Ins. Co. of Cal. V. Certain*

9   *Underwriters at Lloyd's of London*, 93 F.3d 529, 540 (9th Cir. 1996). Here, the Affirmative

10  Defenses, which are set out in section IV C 2, *post*, mount legal and equitable challenges to the

11  Count I contract claim. As discussed above, Starr has demonstrated the absence of genuine

12  dispute as to material facts underlying the elements of the Count I claim—the validity of the 2013

13  Policy, Starr's good faith performance thereunder, JT2 breach by failure to pay the final premium

14  due upon re-audit, and Starr resulting damage in that amount.  JT2's Affirmative Defenses are

15  unsupported in the evidentiary record.  *Grimmway Enters., Inc. v. PIC Fresh Glob., Inc.*, 548 F.

16  Supp. 2d 840, 845 (E.D. Cal. 2008) ("Therefore, to defeat a motion for summary judgment, the

17  non-moving party must show (1) that a genuine factual issue exists and (2) that this factual issue

18  is material.").  Starr need only point out the lack of evidence supporting the Affirmative Defenses

19  to Count I, which it has done.  (*See* Doc. 74); *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d

20  376, 387 (9th Cir. 2010) (citing *Celotex Corp.*, 477 U.S. at 325) (when the non-moving party

21  bears the burden of proof at trial, the moving party need only point out to the district court "[t]hat

22  there is an absence of evidence to support the nonmoving party's case.").

23         3.    Count 2 – Genuine Dispute of Material Fact Whether Starr is Entitled to Summary

24  Judgment on Count II

25               a.    Physical Audit and Re-Audit of the 2014 Policy

26         Starr argues that during the initial audit and re-audit of the 2014 Policy, JT2 failed to

27  provide a properly segregated payroll for the full Policy term, so Starr's auditor, in good faith, re-

28  classified and re-assigned a portion of that payroll as provided in the Policy and governing

1  Manual.  Because JT2 has raised a genuine dispute as to whether that is true, the Court finds

2  summary judgment on Count II is not appropriate.

3  (1)    2014 Initial Audit

4  Starr may not rely upon Bianco's October 12, 2015 initial audit of the 2014 Policy as a

5  basis for summary judgment. Material facts regarding the nature of JT2's operations during the

6  term of the Policy, whether JT2 properly segregated its payroll, and Bianco's reclassification and

7  re-assignment of the 2014 payroll, remain in genuine dispute, for the reasons stated and those that

8  follow.

9  Bianco conducted an initial physical audit of the 2014 Policy on October 12, 2015. (SUF

10  and RSUF No. 13; *see also* Doc. 71-9 at 4; Doc. 71-14 at 2.) Bianco found that JT2 did not

11  properly segregate the payroll by class code, so all payroll was assigned to the highest rated class

12  pursuant to the Manual. (SUF Nos. 14, 45-46; *see also* Doc. 71-14 at 2-3.)

13  JT2 disputes Bianco's finding that the 2014 payroll was not properly segregated by class

14  code for employee work performed. (SUF and RSUF Nos. 14, 45, 46.) JT2 proffers the

15  declaration of James Todd, its president, that he requested additional time to segregate the payroll

16  for the third and fourth quarters of 2014, whereupon Bianco granted some additional time. (SUF

17  and RSUF Nos. 45, 46.) While Bianco represents that she never received properly segregated

18  payroll for 2014 quarters three and four, Todd represents that he "painstakingly segregated the

19  payroll for these quarters, but the auditor did not use the documents or analysis I provided." (Doc.

20  73-6 at 5; *see also* SUF and RSUF Nos. 45, 46.)

21  JT2's expert Bordenave opines that JT2 provided a sufficiently segregated payroll to

22  Bianco for use in determining proper class codes. (RSUF Nos. 43, 45; *see also* Doc. 73-5 at 10);

23  *Bulthuis*, 789 F.2d at 1318; Fed. R. Civ. P. 56(c)(4). As noted, Bordenave represents that he

24  arrived at his opinions following review of the pleadings on file, the discovery responses and

25  deposition transcripts of the PMK's for both parties. (Doc. 73-5 at 2; Doc. 73-7 at 39.)

26  Accordingly, the Court finds that material facts relating to whether JT2 provided Bianco with a

27  sufficiently segregated payroll during her initial audit of the 2014 Policy are genuinely in dispute.

28  *Cf. Gasaway v. Nw. Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994) ("[M]ere allegations or

1   denials" do not meet the opposing party's burden of showing a genuine issue of material fact).

2   (2)   The 2014 Re-Audit

3   Similarly, Starr may not rely upon Bianco's subsequent re-audit of the 2014 Policy as a

4   basis for summary judgment because material facts regarding the nature of JT2's operations

5   during the term of the Policy, whether JT2 properly segregated its payroll, and Bianco's

6   reclassification and re-assignment of the 2014 payroll, remain in genuine dispute, as stated above

7   and below.

8   The record reflects that JT2 disputed the 2014 initial audit results. (SUF and RSUF No.

9   15.) Bianco conducted a physical re-audit of the 2014 Policy on November 22, 2019. (SUF and

10   RSUF Nos. 16, 41, 52; *see also* Doc. 71-9 at 5; Doc. 71-15 at 2.) There is no dispute that JT2

11   provided a payroll breakdown by class code during the 2014 re-audit. (SUF and RSUF No. 41.)

12   The Court finds there is a genuine dispute whether the payroll breakdown provided by JT2 for the

13   2014 re-audit was properly segregated for the full term of the Policy.

14   Starr asserts the classified payroll provided by JT2 was not properly segregated for the

15   third and fourth quarters of 2014. Starr points to Bianco's averment that she did not use JT2's

16   exact payroll breakdown, by class code, in computing the final re-audited 2014 premium due

17   because it was not properly segregated for quarters three and four. (SUF Nos. 41-43; *see also*

18   Doc. 71-9 at 5.) As a result, Bianco reassigned quarters three and four to the highest class codes.

19   (RSUF No. 44; *see also* Doc. 71-9 at 5.)

20   JT2 counters that the payroll breakdown it provided was sufficiently segregated for

21   Bianco to determine proper class codes. (RSUF No. 43, 45-46.) As above, JT2's president, James

22   Todd, represents that "[he] painstakingly segregated the payroll for (the third and fourth quarters

23   of 2014), but the auditor did not use the documents or analysis I provided." (Doc. 73-6 at 5; *see*

24   *also* RSUF Nos. 46-48.)

25   JT2's expert Bordenave, based upon his review of the pleadings on file, the discovery

26   responses and deposition transcripts of the PMK's for both parties, opines that Bianco's 2014 re-

27   audit was improper and in bad faith because Bianco improperly shifted payroll to the highest class

28   code notwithstanding that JT2 provided sufficient information from which Starr could determine

1  the proper rates and classifications. (RSUF Nos. 43, 47-49; *see also* Doc. 73-5 at 2, 10; Doc. 73-7

2  at 39.)

3       Accordingly, the Court finds that Starr has not carried its burden of showing the absence

4  of genuine dispute of material fact that it is entitled to summary judgment based upon a good faith

5  re-audit of the 2014 Policy. Even if it had, JT2's opposition showing is sufficiently probative to

6  cause reasonable persons to disagree on whether the facts claimed by Starr are true, so as to

7  "require a jury or judge to resolve the parties' differing versions of the truth." *Aydin Corp.*, 718

8  F.2d at 902; *cf. Anderson*, 477 U.S. at 249–250.

9       For the reasons stated, whether Starr performed the 2014 Policy initial audit and re-audit

10  in good faith pursuant to the Policy and Manual is a material fact in genuine dispute. It follows

11  that whether JT2 breached the 2014 Policy, damaging Starr in the assessed final premium amount

12  of $54,418.00 also is genuinely in dispute. (*Id.*) The Court need not and does not reach these

13  issues of breach and damage. *See Dependable Highway Express, Inc.*, 2019 WL 988680, at *7

14  ("Whether Plaintiff suffered damages due to Defendant's alleged breach hinges on whether

15  Plaintiff performed in good faith, which is genuinely in dispute. Accordingly, the Court declines

16  to address this element.")

17  C.   Alternative Motion for Partial Summary Judgment

18       1.   Count I

19       The Court, having found Starr is entitled to summary judgment on Count I, does not reach

20  the alternative motion as to JT2's Affirmative Defenses against Count I.[3]

21       2.   Count II

22       Starr seeks partial summary judgment as to JT2's following Affirmative Defenses: First

23  Affirmative Defense (failure to state a claim for relief), Second Affirmative Defense (statute of

24  limitations), Third Affirmative Defense (waiver), Fourth Affirmative Defense (estoppel), Fifth

25  Affirmative Defense (ratification), Sixth Affirmative Defense (failure to mitigate), Seventh

26  Affirmative Defense (full performance), Eighth Affirmative Defense (Good faith), Ninth

27

28

---

[3] The Count I Affirmative Defenses are the same as the Count II Affirmative Defenses, discussed in section IV C 2, *post.*

Affirmative Defense (unclean hands), Tenth Affirmative Defense (conduct of plaintiff), Eleventh Affirmative Defense (full payment), Twelfth Affirmative Defense (material breach), Thirteenth Affirmative Defense (substantial compliance), Fourteenth Affirmative Defense (improper calculation), Fifteenth Affirmative Defense (setoff). (Doc. 71-16 at 11-15; *see also* Doc. 10 at 6-11; Doc. 26 at 7-10.)

As discussed above, Starr "must either produce evidence negating an essential element of the nonmoving party's claim . . . or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). Thus, Starr must show the Court that no genuine dispute of material fact exists as to each Affirmative Defense. *Id.* at 1102.

If Starr does not meet its initial burden of production, then JT2 as the nonmoving party need not produce any evidence to defeat the motion. *Id.* at 1103; *see also Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d 1067, 1072 (N.D. Cal. 2012) (citing *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)) (same); *eOnline Global, Inc.*, 387 F. Supp. 3d at 984 (same). Likewise, the Court finds JT2's Affirmative Defenses to Count 2 are not suitable for disposition upon summary adjudication, on multiple grounds.

The alternative motion fails procedurally because is it unsupported by the requisite separate statement of undisputed facts setting out each grounds for challenge and the supporting admissible evidence. *See* Local Rule 260(a)(f). Starr's proffered Statement of Undisputed Facts does not comply with Local Rule 260 because it fails to allege each of the material facts Starr relies upon to support summary adjudication of each Affirmative Defense. *See Luna v. Vo*, No. CV F 08-1962 AWI SMS, 2010 WL 4878788, at *2 (E.D. Cal. Nov. 17, 2010) (The court concludes that Plaintiff's proffered "Statement of Undisputed Facts" violates Local Rule 260 in that it fails to allege each of the material facts that Plaintiff relies upon to support both of her claims for summary judgment (or adjudication).").

Additionally, the alternative motion challenging JT2's Affirmative Defenses fails substantively. The disputed material facts underlying Starr's Count II, discussed above, also

1   underlie the Affirmative Defenses against that Count, leaving the Defenses in dispute.  Thus, even

2   if the Statement of Undisputed Facts that Starr proffered in support of its motion for summary

3   judgment could be considered in support of its alternative motion for summary judgment, that

4   Separate Statement nonetheless falls short.[4] Notably, Starr has not argued or demonstrated that

5   any of the Affirmative Defenses presents pure questions of law.

6   D.   <u>Conclusions</u>

7       1.     The parties' evidentiary objections lack merit.

8       2.     The undisputed material facts in this case demonstrate that: (1) the Policies were

9   valid contracts between Starr and JT2, (2) Starr provided the worker's compensation coverage

10   afforded by the Policies, (3) Starr used JT2's segregated payroll breakdown, by class code, to

11   compute the final premium of $22,563.00 due on the 2013 Policy following re-audit, in

12   accordance with the Policy and the governing Manual, (4) JT2 failed to pay the final premium of

13   $22,563 due on the 2013 Policy upon demand, a breach damaging Starr in that amount, and (5)

14   JT2's Affirmative Defenses are unsupported by evidentiary proffer and not genuinely in dispute

15   as to Count I.

16       3.     The disputed material facts in the case are whether: (1) JT2 provided Starr with a

17   payroll breakdown by class code for the entire term of the 2014 Policy, (2) Starr's reclassification

18   and re-assignment of 2014 payroll following audit and re-audit to compute a final premium due of

19   $54,418.00 was in good faith and in accordance with the Policy and the Manual, (3) JT2 breached

20   the 2014 Policy by failing to pay a final premium of $54,418.00 upon demand, damaging Starr in

21   that amount, and (4) JT2's Affirmative Defenses are colorable as to Count II.

22       Thus, the Court **ORDERS**:

23       1.     The evidentiary objections lodged by Defendant JT2 (Docs. 73-2, 73-3) are

24   **OVERRULED**.

25

26   [4] JT2's Ninth Affirmative Defense, an equitable defense of unclean hands, though not a bar to the legal relief sought in Count II, could challenge Starr's performance of the implied covenant of good faith and fair dealing, such that

27   summary adjudication is inappropriate on that ground. *See Powell v. Union Pac. R. Co.*, 864 F. Supp. 2d 949, 963 (E.D. Cal. 2012) (citing *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245, 54 S. Ct. 146, 78 L. Ed. 293

28   (1933)) (the doctrine of unclean hands bars a plaintiff from seeking equitable relief).

2.      The evidentiary objections lodged by Plaintiff Starr (Doc. 74-6) are **OVERRULED**.

3.      Starr's motion for summary judgment (Doc. 71) is **GRANTED** as to Count I, and otherwise **DENIED**.

4.      Starr's alternative motion for partial summary judgment (Doc. 71) is **DENIED** as to the Affirmative Defenses against Count II. The Court does not reach the alternative motion as to Count I.

5.      The matter is referred to the Magistrate Judge for further proceedings.

IT IS SO ORDERED.

Dated:   **October 31, 2023**

UNITED STATES DISTRICT JUDGE